1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**
9           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  | In re:  SERACARE LIFE SCIENCES, INC. | CASE NO. 05-CV-2335-H (CAB) |

In re:  SERACARE LIFE SCIENCES, INC.
SECURITIES LITIGATION,




Consolidated Proceedings

CASE NO. 05-CV-2335-H
(CAB)

ORDER GRANTING
WITHOUT PREJUDICE
KPMG'S AND THE
UNDERWRITER
DEFENDANTS' MOTION TO
DISMISS AND DENYING
WITHOUT PREJUDICE
KPMG'S MOTION TO FILE
UNDER SEAL

[Doc. Nos. 82, 88, 100]

        On July 17, 2006, plaintiffs Richard, Jana, David, John and Lauren Westlund, and Massachusetts State Guaranteed Annuity Fund ("Plaintiffs") filed a consolidated complaint in the above-captioned suit. (Doc. No. 58.) On December 5, 2006, defendant KPMG filed a motion to dismiss Plaintiffs' claims for violations of Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933. (Doc. No. 82.)  KPMG filed a motion requesting the Court take judicial notice of certain documents with their motion to dismiss. (Doc. No. 83.)  Also on December 5, 2006, defendants CIBC World Markets Corp., Thomas Weisel Partners LLC, and William Blair & Co. LLC (collectively the "Underwriter Defendants") filed a motion to dismiss Plaintiffs' claim alleging a violation of Section 11 of the Securities Act. (Doc. No. 85.)

On December 6, 2006, KPMG filed a corrected motion to dismiss.  (Doc. No. 88.)  On January 26, 2007, Plaintiffs filed an opposition to KPMG's motion to dismiss (Doc. No. 96.), and an opposition to the Underwriter Defendants' motion to dismiss.  (Doc. No. 97.)  On February 26, 2007, KPMG filed a reply.  (Doc. Nos. 106, 107.)  Also on February 26, 2007, the Underwriter Defendants filed a reply.  (Doc. No. 109.)

On February 13, 2007, KPMG filed an ex parte application seeking permission to filed certain documents under seal.  (Doc. No. 100.)  On February 14, 2007, Plaintiffs filed a response in opposition to KPMG's application.  (Doc. No. 102.)  On February 14, 2007, the Court entered a scheduling order regarding KPMG's application and requested clarification from KPMG as to whether it was seeking in camera review of the documents.  (Doc. No. 103.)  On February 20, 2007, KPMG clarified that it was requesting an in camera review of the documents.  (Doc. No. 104.)  Plaintiffs filed a second opposition to KPMG's application on March 2, 2007.  (Doc. No. 113.)  KPMG filed a reply in support of its application on March 9, 2007.  (Doc. No. 115.)

The Court held a hearing on these motions on March 19, 2007.  Attorneys Andrew N. Friedman and Daniel S. Drosman represented Plaintiffs, attorneys Timothy Scott Vick and Gwyn Quillen represented KPMG, and attorney Thomas A. Nolan represented the Underwriter Defendants at the hearing.  For the following reasons, the Court **GRANTS WITHOUT PREJUDICE** KPMG's motion to dismiss Plaintiffs' Section 10(b) and Section 11 claims.  The Court **GRANTS WITHOUT PREJUDICE** the Underwriter Defendants' motion to dismiss Plaintiffs' Section 11 claim consistent with this order.  The Court **DENIES WITHOUT PREJUDICE** KPMG's motion to file certain documents under seal.

## **Background**

For purposes of resolving this motion to dismiss, the Court accepts all well pleaded facts alleged in the consolidated complaint as true.  See Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).  This factual summary is taken in the light most favorable to Plaintiffs.  See Number 84 Employer-Teamster Joint Council Pension Trust

Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2, 931 (9th Cir. 2003). Where appropriate, the Court has also considered documents attached to and incorporated into the complaint and has taken judicial notice of certain facts.

Plaintiffs bring this securities class action on behalf of the purchasers of SeraCare Life Sciences, Inc.'s ("SeraCare") securities between May 14, 2003 and March 23, 2006. (Consol. Compl. ¶ 1.) SeraCare is a California corporation engaged in the manufacture and marketing of biological products for diagnostic, therapeutic, drug discovery and research concerns. (Id. ¶ 19.) The Underwriter Defendants are integrated financial services institutions that provide commercial and banking services and acted as underwriters to SeraCare's secondary public offering in May 2005 ("Secondary Offering"), which allowed SeraCare to collect $39 million in proceeds. (Id. ¶¶ 6, 34-37.) KPMG was SeraCare's auditor and outside accountant from 2002 until August 2005. (Id. ¶¶ 38, 233.) KPMG audited SeraCare's financial statements from 2002-2004, evaluated SeraCare's 10-Q for the period ending June 30, 2005, was working on SeraCare's third quarter 2005 financial statements, provided accounting and auditing services in connection with the Secondary Offering, and provided tax, consulting and acquisition services to SeraCare. (Id. ¶¶ 38, 233-235.) KPMG also met regularly with members of SeraCare's Audit Committee in 2003 (id. ¶ 244), and consented to be named as an expert in the registration statement for the Secondary Offering, in which KPMG stated that it audited SeraCare's 2003 and 2004 financial documents. (Id. ¶¶ 152, 253.)

SeraCare's 2003 and 2004 Form 10-K annual reports filed with the SEC included KPMG's unqualified audit reports on SeraCare's annual financial statements for the fiscal years ending September 30, 2003 and September 30, 2004. (Id. ¶¶ 38, 93, 115, 251-52.) In the course of KPMG's audits, it examined SeraCare's financial statements, evaluated its internal controls, and assessed the overall quality of its accounting and financial reporting procedures. (Id. ¶ 62.) KPMG's unqualified opinions included in SeraCare's 2003 and 2004 Form 10-K reports stated that it examined SeraCare's September 30, 2002, September 30, 2003, and September 30, 2004 balance sheets, and

the related statements of operations and income, stockholders' equity, and cash flows, and in KPMG's opinion those financial statements fairly presented SeraCare's financial position, as of September 30, 2002, 2003, and 2004, in all material respects. (See id. ¶¶ 251-252.)   KPMG represented that it performed its audits in accordance with generally accepted auditing standards ("GAAS") and the SeraCare's financial statements satisfied generally accepted accounting principles ("GAAP"). (Id.)

On May 25, 2005, SeraCare filed its Prospectus and Registration Statement ("Registration Statement") pursuant to its Secondary Offering of 3.5 million shares of stock. (Id. ¶ 145.) The Registration Statement also contained a statement from KPMG indicating that they had audited SeraCare's September 30, 2003, and September 30, 2004 balance sheets, and the related statements of operations, stockholders' equity, and cash flows for each of the years for the three year period ending September 30, 2004, and that those statements fairly presented the financial position of SeraCare in all material respects, in conformity with GAAP. (See id. ¶ 253.)

In August 2005, SeraCare fired KPMG and hired Mayer Hoffman McCann P.C. ("MHM") to replace KPMG. (Id. ¶233.)   Approximately four months later, MHM reported concerns regarding its uncompleted audit of SeraCare's balance sheet as of September 30, 2005, and the related statements of income, stockholders' equity, and cash flows for the year then ended. (Id. ¶¶ 64, 243, Ex. 7.)

On December 14, 2005, SeraCare announced that it could not timely file its SEC Form 10-K. (Id. ¶¶68, 132.) On December 20, 2005, SeraCare publicly announced MHM's findings and concerns regarding SeraCare's accounting for and valuation of inventory, MHM's perception that certain board members were exerting undue influence on SeraCare's financial reporting process and on the audit process, and the timeliness, quality and completeness of SeraCare's implementation and testing of its internal control over financial reporting. (Id. ¶¶ 71, 134.) Also on December 20, 2005, SeraCare's stock price fell from $19.20 to $10.04. (Id. ¶ 72.)

On March 15, 2006, SeraCare terminated its Chairman of the Board of Directors,

Chief Executive Officer, Secretary, Chief Financial Officer, and ordered the first three individuals to resign from the Board of Directors.  (Id. ¶¶ 76, 142.) SeraCare also issued a statement on March 15, 2006, announcing that the 10-Q reports for the quarters ended December 31, 2004 and March 31, 2005 should no longer be relied upon, and that it expected to restate one or more of those financial statements.  (Id. ¶¶ 75, 141.) SeraCare admitted that there were material weaknesses in its internal control over financial reporting.  (Id.)  SeraCare filed for bankruptcy on March 23, 2006.  (Id. ¶ 144.)

Plaintiffs allege two claims against KPMG, a claim for an alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and a claim for an alleged violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k. The sole claim brought against the Underwriter Defendants is a claim under Section 11 of the 1933 Securities Act.

**Discussion**

**I.      Requests for Judicial Notice**

Before addressing the merits of the motions to dismiss, the Court must resolve the requests for judicial notice.  KPMG requests the Court take judicial notice of: (1) Accounting Research Bulletin 43, Chapter 4, inventory pricing ("ARB 43"); (2) the existence of statements made in SeraCare's April 7, 2006 bankruptcy court Supplemental Brief Supporting Motion for Use of Cash Collateral; and (3) the existence of statements made in the Declaration of Cathryn Low in Support of SeraCare's Motion Order Authorizing Use of Cash Collateral in association with SearCare's bankruptcy proceedings. (KPMG LLP's Req. Judicial Notice Supp. Mot. Dismiss, at 1-3.)  KPMG states it is not asking the Court to take judicial notice of the truth of the matters asserted in association with SeraCare's bankruptcy proceedings, only their existence.  KPMG also requests the Court take judicial notice of statements made in SeraCare's June 30, 2005 Form 10-Q.  (KPMG LLP's Supplemental Req. Judicial Notice Supp. Mot. Dismiss, at 1-2.)  Plaintiffs did not object to the Court taking judicial notice of these

documents

When determining a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court cannot consider matters outside the complaint except for authenticated documents that have been incorporated into the complaint and facts that are subject to judicial notice.  <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689-90 (9th Cir. 2001).  Judicial notice may be taken of facts not subject to reasonable dispute in that they are "generally known" in the community or "capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned."  <u>See</u> Fed. R. Evid.  201(b). Federal courts may take judicial notice of other courts' proceedings, within the federal judiciary and without, if the proceedings directly relate to the matters before the court. <u>See</u> <u>U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, the Court takes judicial notice of the existence of statements made in SeraCare's April 7, 2006 bankruptcy court Supplemental Brief Supporting Motion for Use of Cash Collateral and the existence of statements made in the Declaration of Cathryn Low in Support of SeraCare's Motion Order Authorizing Use of Cash Collateral.

Furthermore, the content of ARB 43 is not subject to reasonable dispute in that it is capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned.  Accordingly, the Court takes judicial notice of ARB 43.  Finally, the "incorporation by reference" doctrine permits district courts to consider, in connection with a motion to dismiss, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to plaintiff's pleading.  <u>See</u> <u>In re Silicon Graphics Inc. Securities Litigation</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>see also</u> <u>Branch v. Tunnell</u>, 14 F3d 449, 454 (9th Cir. 1994) (holding that documents not physically attached to the complaint may nonetheless be considered by the court on a 12(b)(6) motion to dismiss if the complaint refers to such documents, the documents are "central" to plaintiff's claim,

1   and no party questions the authenticity of the copy attached to the 12(b)(6) motion.

2   The contents of SeraCare's June 30, 2005 10-Q are referred to in the consolidated

3   complaint, and no party has questioned the authenticity of the 10-Q.  Accordingly, the

4   Court takes judicial notice of SeraCare's June 30, 2005 10-Q.

5   **II.      Motion to Dismiss**

6          KPMG and the Underwriter Defendants have moved to dismiss Plaintiffs' claims

7   against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

8   failure to state a claim upon which relief can be granted.  A motion to dismiss for failure

9   to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the

10  complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 12(b)(6) permits

11  dismissal of a claim either where that claim lacks a cognizable legal theory, or where

12  insufficient facts are alleged to support plaintiff's theory.  See Balistreri v. Pacifica

13  Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  In considering the sufficiency of a

14  complaint under Rule 12(b)(6), courts cannot grant a motion to dismiss "unless it

15  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

16  which would entitle him to relief."  Id. (citing Conley, 355 U.S. at 45-46).  Dismissal

17  is proper, however, if a complaint is vague, conclusory, and fails to set forth any

18  material facts in support of the allegation.  See North Star Intern. v. Arizona Corp.

19  Com'n, 720 F.2d 578, 583 (9th Cir. 1983).

20         In resolving a Rule 12(b)(6) motion, including a motion brought against a claim

21  for securities fraud, the court must construe the complaint in the light most favorable

22  to the plaintiff, accept all well-pleaded factual allegations as true, and determine

23  whether plaintiff can prove any set of facts to support a claim that would merit relief.

24  See Gompper, 298 F.3d at 896.  If a complaint is found to fail to state a claim, the court

25  should grant leave to amend unless it determines that the pleading could not possibly

26  be cured by the allegation of other facts. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d

27  1097, 1108 (9th Cir. 2003).

28  / / /

**A.     Plaintiffs' Section 10(b) Claim Against KPMG**

Plaintiffs' first claim alleges that KPMG violated Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, by making false and misleading statements and failing to dislcose material adverse facts regarding SeraCare's financial status which caused purported class members to purchase SeraCare's stock at inflated prices, causing them damages.  Section 10(b) of the Exchange Act makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  In re Daou Systems, Inc., 411 F.3d 1006, 1014 (9th Cir. 2005).  "SEC Rule 10b-5, promulgated under the authority of section 10(b), in turn, provides: It shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  Id.  (citing 17 C.F.R. § 240.10b-5).  Therefore, the elements of a Rule 10b-5 claim are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss.  See id.

Claims brought under Rule 10b-5 and Section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b).  See id.  Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Additionally, the Private Securities Litigation Reform Act ("PSLRA"), enacted in 1995, amended the 1934 Securities Exchange Act to require that a complaint in a private securities fraud suit must plead falsity and scienter with particularity.  See id.;

see also Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir.2004).  "A securities fraud complaint must now 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Daou Systems, Inc., 411 F.3d at 1014 (citing 15 U.S.C. § 78u-4(b)(1)).  Further, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. (citing 15 U.S.C. § 78u-4(b)(2)). "The stricter standard for pleading scienter naturally results in a stricter standard for pleading falsity, because 'falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts,' and the two requirements may be combined into a unitary inquiry under the PSLRA." Id. (citing In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir.2002)).  Therefore, the complaint alleging a violation of Section 10(b) and Rule 10b-5 must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.  See id. at 1014-15 (citing Silicon Graphics, 183 F.3d at 974).

### 1.    Material Misrepresentations or Omissions

Plaintiffs allege that KPMG made three categories of misstatements.  First, they allege that KPMG misrepresented that SeraCare's audited financial statements fairly presented the company's financial position in all material respects in SeraCare's 2003 and 2004 10-Ks, and SeraCare's Registration Statement, because in fact, SeraCare's financial statements contained improperly recognized revenue and overvalued inventory.  (Consol. Compl. ¶¶ 93-94, 115-16, 251-54.)  Second, Plaintiffs allege that KPMG misstated in SeraCare's 2003 and 2004 Form 10-Ks that it audited SeraCare's financial documents according to GAAS.  (Id. ¶¶ 236-40.)  Third, Plaintiffs allege that KPMG is responsible for misstatements made by SeraCare in its unaudited 2005 quarterly financial statements.  (Id. ¶¶ 117-31, 166, 234, 327-334.)  KPMG argues that Plaintiffs have failed to plead with particularity that SeraCare's audited 2003 and 2004

financial statements contained misrepresentations, that KPMG failed to audit SeraCare's financial statements according to GAAS, or facts to demonstrate that KPMG should be liable for any statements made in SeraCare's unaudited 2005 quarterly statements.

a.    **SeraCare's 2003 and 2004 Audited Financial Statements**

1.    **Premature Recognition of Revenue**

If properly pled, overstating revenues on financial statements may state a claim for securities fraud, because under GAAP, revenue must be earned before it can be recognized. See Daou Systems, Inc., 411 F.3d at 1016. When pleading irregularities in revenue recognition, plaintiffs should allege: (1) such basic details as the approximate amount by which revenues and earnings were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or company employees involved in the transactions. See id. A plaintiff does not necessarily need to allege each of these details, but they must allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue. See id. at 1017.

Plaintiffs allege that KPMG's statement that SeraCare's 2003 audited financial statements fairly presented SeraCare's financial position is false because SeraCare recognized $1 million in revenue from the sale of albumin to Wyeth Pharmaceuticals, Inc. ("Wyeth") in the March 2003, even though delivery did not occur until after September 30, 2003, in other words in fiscal year 2004. (Consol. Compl. ¶¶ 172-78.) The albumin was shipped approximately six months after March 2003, directly from Grifols, the manufacturer of the albumin. (Id. ¶¶ 172, 177.) Wyeth paid for the albumin in October, 2003. (Id. ¶ 177.)

This recognition of revenue allegedly violated the rule from the SEC's Staff Accounting Bulletin ("SAB") Topic 13 that revenue should generally not be recognized until delivery has occurred, which takes place when the customer takes title and

assumes the risks and rewards of ownership. (Consol. Compl. ¶¶ 196-201.) Plaintiffs allege that confidential witness number 1 ("CW-1") can verify the fact that the delivery of albumin to Wyeth occurred after September 30, 2003. (Id. ¶ 173.) Plaintiffs also allege that an e-mail attached to the complaint as exhibit 8 corroborates CW-1's knowledge that the albumin was delivered to Wyeth after September 30, 2003. That e-mail, sent to SeraCare's chief executive officer ("CEO") Michael Crowley and dated Friday, September 26, 2003 at 8:56 a.m., stated that the shipment had not "cleared FDA hold," but that if it cleared on September 26, 2003, it would be delivered to Wyeth on Tuesday, September 30, 2003.

Defendants argue that Plaintiffs have failed to particularly plead that CW-1 has personal knowledge about the date the albumin was shipped to Wyeth. Plaintiffs allege that CW-1 was employed at SeraCare from approximately September 1998 through July 2005. (Id. ¶ 159.) CW-1 worked as an albumin salesperson, and was promoted to Vice President of Bioprocessing Products in March 2005. (Id.) He worked closely and was in frequent contact with SeraCare's senior management, including SeraCare's CEO Michael Crowley, regarding product shipment. (Id.)

These allegations are particular enough to justify Plaintiffs' use of CW-1 as a confidential witness. See Daou Systems, Inc., 411 F.3d at 1016 (a confidential witness is described with sufficient particularity by numbering the witness, describing his job description and responsibilities, and stating to which executive the witness reports). When a witness is not named, however, a plaintiff must provide corroborating facts to provide an adequate basis for believing that the defendants' statements were false. See id. at 1015. Plaintiffs do not provide adequate corroborating facts. First, the delivery was made by Grifols directly to Wyeth, which decreases the probability that CW-1 knew exactly when the delivery occurred. Second, the e-mail does not corroborate CW-1's knowledge that the delivery occurred after September 30, 2003, because the e-mail states that if the albumin was cleared on September 26, 2003, than it would be delivered to Wyeth on September 30, 2003. Therefore, Plaintiffs have failed to allege with

sufficient particularity that SeraCare mistakenly reported that it received the revenue from the albumin sale to Wyeth during fiscal year 2003, and accordingly, Plaintiffs have failed to allege that KPMG misstated that SeraCare's 2003 audited financial statements fairly presented the company's financial position in all material respects based on that sale.

Additionally, Plaintiffs argument that CW-5 was aware that Wyeth cancelled its order, but that SeraCare believed that they did not have the right to cancel the order after the product was produced (id. ¶ 174), fails to corroborate the delivery date, especially considering that Plaintiffs allege that Wyeth paid for the albumin in October 2003. (Id. ¶ 177.)

Plaintiffs also allege that CW-1 is aware that SeraCare prematurely recognized revenue in association with a shipment of albumin to Biogen in 2003. (Id. ¶¶ 179-80.) Plaintiffs allege that Biogen cancelled their order for $385,000 of albumin, but SeraCare sent the product anyway, and recognized the revenue in 2003. (Id. at ¶ 179.) The matter was allegedly resolved by the parties agreeing that Biogen would pay SeraCare $280,000, after which Biogen shipped the product back to Biogen. (Id. at ¶ 180.) This allegation fails to meet Rule 9(b)'s particularity pleading requirement because it fails to provide corroborating evidence for CW-1 knowledge of this transaction, or describe when the companies resolved their conflict, whether SeraCare accounted for the resolution of the conflict on their financial documents, and how SeraCare's recognition violated GAAP.

Plaintiffs allege that SeraCare prematurely recognized revenue from a sale of albumin to BioVitrum. (Id. 181-84.) SeraCare allegedly recognized the revenue in September 2005. (Id. ¶ 182.) Therefore, this allegation can not demonstrate that KPMG's statements that SeraCare's 2003 and 2004 audited financial statements fairly present the financial position of SeraCare in all material respects.

Plaintiffs also allege that CW-1, 2, 5, 7, 9, and 11 are aware that SeraCare habitually shipped products out before customers wanted the product at the end of

quarters so that they could recognize revenue during that quarter. (<u>Id.</u> ¶ 185-93.) They allege that customers, including Sigma and Merck, frequently complained about this practice. (<u>Id.</u> ¶ 186.) CW-7 allegedly heard Michael Crowley, SeraCare's CEO, and other senior management as SeraCare state, "The customer doesn't want the shipment until mid-month next month, but let's send it now because we need to make our numbers for the quarter." (<u>Id.</u> ¶ 189.) Plaintiffs allege that CW-1 is aware that at the end of each quarter, defendants would prematurely book up to, and sometimes more than $500,000. (<u>Id.</u> ¶ 187.) These allegations fail to show with particularity that KPMG's statements regarding SeraCare's financial statements as of September 30, 2003 and 2004 were material misrepresentations, because they fail to allege the specific products that were involved in these shipments, when they were shipped, how much revenue was recorded on SeraCare's financial statements as of September 30, 2003 and 2004 from these shipments, and how that recorded revenue violated GAAP.

## 2.    Inventory Accounting

Plaintiffs allege that SeraCare violated GAAP by overvaluing products they held in inventory. (Consol. Compl. ¶¶ 202-207.) Plaintiffs rely in part on CW-9, a former President and member of the Board of Directors of SeraCare until he left the company in 2001. (<u>Id.</u> ¶¶ 167, 202-204.) CW-9 allegedly kept close contact with senior management of SeraCare until 2005. (<u>Id.</u> ¶ 167.) This description of CW-9 is insufficiently particular to support his use as a confidential witness regarding KPMG's allegedly false statements regarding SeraCare's audited financial statements between 2003-2005, since it fails to support the probability that a person in the position occupied by CW-9, who left SeraCare in 2001, would possess the information alleged. See <u>Daou Systems, Inc.</u>, 411 F.3d at 1015-16.

Plaintiffs allege that CW-7 noticed that inventory values significantly increased in mid-2004, such that products that were close to expiring increased in value from $5.00/ml to $20.00/ml, which was not justifiable in CW-7's opinion. (Consol. Compl. ¶ 205.) Plaintiffs allege CW-7 was a Warehouse Logistics Manager at SeraCare's

corporate headquarters from 2001-2005, whose responsibilities included shipping and receiving final product and raw materials (both domestic and international shipments), distributing and tracking production materials, managing inventory, and performing annual inventory audits at SeraCare's Oceanside, California facility.  (Consol. Compl. ¶ 165.)  This description fails to support a probability that CW-7 possesses information regarding SeraCare's inventory valuation.  See Daou Systems, Inc., 411 F.3d at 1015. Furthermore, Plaintiffs' fail to offer corroborating evidence regarding the fact that the inventory values should not have been increasing.   Additionally, CW-7 alleged knowledge that in 2004, he performed an inventory count that failed to match the quantity of the inventory in the computer with the amount of inventory on hand lacks specificity regarding the extent of the mismatch, and how that mismatch was reflected on the audited financial statements, which is critical for the Court determining whether the mismatch was minor or significant in nature.  See id., 411 F.3d at 1017.

Plaintiffs allegation that Plaintiffs' carried "worthless plasma" on its books that it stored in its Hatboro facility (Consol. Compl. ¶ 207), lacks particularity regarding the key elements of why the plasma was worthless, and what was the financial impact on SeraCare's financial statements.  Similarly, their allegation that SeraCare's inventory included  "esoteric" material that was of unknown sales value (id. ¶ 208) lacks particularity regarding what material they are referring to, why the material was worthless, and what was the financial impact on SeraCare's financial statements.

Plaintiffs allege that SeraCare improperly capitalized overhead expenses to inventory, in violation of chapter 4 of ARB 43, causing an overvaluation of the value in inventory.  (Id. ¶¶ 209-12, 215-20.)   As with Plaintiffs' other allegations, this allegation suffers from Plaintiffs' failure to particularly allege how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position.  Plaintiffs allegations on this issue are limited to two facts.  First, CW-6, a bookkeeper for SeraCare's Hatboro, Pennsylvania subsidiary (id. ¶ 164), had knowledge that an item was valued at $1.00 before SeraCare

purchased BioMedical Resources, Inc. ("BMR") in July 2003, was valued at $13.00 after the acquisition.  (Id. ¶ 210.)  Second, Plaintiffs allege that on April 7, 2006, SeraCare reported that its "bankable" inventory was $17 million, which was a 50% reduction from the inventory SeraCare allegedly reported on its June 30, 2005 quarterly public statement.  (Id. ¶ 219.)  Plaintiffs allegations regarding SeraCare's statement regarding "bankable" inventory fails to particularly allege how that statement relates to SeraCare's reporting of inventory on their 2003 and 2004 audited financial statements.  Furthermore, the totality of Plaintiffs' allegations fail to demonstrate by how much Plaintiffs' alleged practice of improperly capitalizing overhead expenses to their inventory inflated the value of the inventory on SeraCare's 2003 and 2004 audited documents.

### 3.     Conclusion Regarding SeraCare's 2003 and 2004 Audited Financial Statements

Plaintiffs have failed to allege with particularity that any false statements were made on SeraCare's 2003 or 2004 audited financial statements.  Therefore, Plaintiffs have also failed to allege with particularity that KPMG's statements that those audited financial statements fairly presented SeraCare's financial position on SeraCare's 2003 and 2004 10-Ks, and the Registration Statement, were material misrepresentations.

### b.     Audits Performed According to GAAS

Plaintiffs allege that KPMG made a false and misleading statement in SeraCare's 2003 and 2004 10-Ks, and the Registration Statement, when it stated that it audited SeraCare's financial statements according to GAAS.  (Compl. ¶ 233, 236-40.)  Since Plaintiffs have failed to particularly allege the falsity of SeraCare's underlying financial statements, any statement regarding the quality of KPMG's audit, even if it were false, would not be an actionable statement under section 10(b) and Rule 10b-5 because it would not be a material false statement connected to damages related to the purchase or sale of a security.  Therefore, Plaintiffs have failed to particularly allege that KPMG's statements that they performed their audits according to GAAS on SeraCare's

2003 and 2004 10-Ks, and the Registration Statement, was a material misrepresentation.

### c.    SeraCare's 2005 Quarterly Statements

Plaintiffs allege that KPMG is liable for materially false statements made in SeraCare's first three quarterly statements of 2005.  (Consol. Compl. ¶¶ 117-31, 327-34.)  Although Plaintiffs' do not allege that KPMG made any public statements regarding those quarterly reports, nor do they allege that KPMG was mentioned in them, Plaintiffs argue that KPMG is liable under a "substantial participation" theory.

An accounting firm's substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the accounting firm actual making the statements.  See In re Software Toolworks Inc., 50 F.3d 615, 628-29 & n. 3 (9th Cir. 1994); see also Howard v. Everex Systems, Inc., 228 F.3d 1057, 1061 n.5 (9th Cir. 2000).  In Software Toolworks Inc., the Ninth Circuit held that evidence that a letter sent by a client to the SEC indicating that the letter was prepared after extensive review and discussions with an accounting firm, and that referred the SEC to two partners of the accounting firm for further information, along with additional evidence that the accounting firm played a significant role in drafting and editing the letter, was sufficient to sustain a primary cause of action against the accounting firm under section 10(b).  See id. at 628 n.3.

Plaintiffs allege that KPMG participated in editing and approving SeraCare's 2005 quarterly statements, and that SeraCare stated that KPMG evaluated the financials contained in the 10-Q for the period ending June 30, 2005.  (Consol. Compl. ¶ 234.)  Additionally, Plaintiffs allege that CW-8 has knowledge that KPMG started reviewing SeraCare's third quarter 2005 10-Q in July 2005 and continued to work on them until they were filed.  (Id.)  CW-8 worked at SeraCare's Oceanside, California facility from April 2003 through April 2006, first as a Quality Control Technician, and later as a Quality Assurance Supervisor, and reported to Facility Operations Manager Duane Pinkerton.  (Id. ¶ 166.)  CW-8 participated in annual and other periodic physical inventory counts at the Oceanside facility.  (Id.)

The Court concludes that these allegations are insufficient to allege with particularity the degree of substantial participation or intricate involvement required to make KPMG primarily liable for any misstatements in SeraCare's 2005 10-Qs. Allegations that KPMG participated in editing and approving the 10-Qs, and that KPMG evaluated them, falls significantly short of the type of participation that the Ninth Circuit found sufficed to establish liability under a substantial participation theory in Software Toolworks Inc. Therefore, Plaintiffs have failed to particularly allege that KPMG made any material misrepresentations in association with SeraCare's three 2005 10-Qs.

Since Plaintiffs have failed to allege with particularity that KPMG made any material misrepresentations, the Court grants KPMG's motion for summary judgment on Plaintiffs' 10(b) claim. The Court declines to address KPMG's other arguments regarding Plaintiffs' failure to adequately allege facts in support of their § 10(b) claim as those arguments are moot.

**B.    Plaintiffs' Section 11 Claim Against KPMG**

**1.    Pleading Standard**

Plaintiffs allege that KPMG violated § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. 11. (Consol. Compl. ¶¶ 351-62.) Section 11 creates a private remedy against certain individuals when any part of a registration statement, when it became effective, contains an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. See 15 U.S.C. § 77k(a). "No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." In re Stac Electronics Securities Litigation, 89 F.3d 1399, 1404 (9th Cir. 1996).

Among the class of individuals that are potentially liable under § 11 are:

[E]very accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement, or as having

prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him.

15 U.S.C. § 77k(a)(4).  "Section 11 of the 1933 Act permits an action against an accountant based on material misstatements or omissions in a registration statement, but only as to those portions of the statement that purport to have been prepared or certified by the accountant."  <u>Monroe v. Hughes</u>, 31 F.3d 772, 774 (9th Cir. 1994).

KPMG argues that Plaintiffs' § 11 claim against them "sounds in fraud" and should therefore be dismissed for failure to adequately plead with particularity the circumstances constituting the claim, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs counter that their § 11 claim against KPMG is based on their allegation that KPMG negligently violated their duty to ensure the accuracy and completeness of the registration statement associated with the Secondary Offering, and therefore they are only required to plead a short and plain statement of their claim pursuant to Rule 8(a).

In cases where fraud is not a necessary element of a claim, but a plaintiff chooses to allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of the claim, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).  <u>See</u> <u>Vess</u>, 317 F.3d at 1103-04; <u>see also</u> <u>In re Stac Elecs. Sec.</u> <u>Litig.</u>, 89 F.3d 1399, 1404-05 (9th Cir. 1996) ("We now clarify that the particularity requirements of Rule 9(b) apply to claims brought under Section 11 when, as here, they are grounded in fraud."  In cases where a plaintiff chooses to allege some fraudulent and some non-fraudulent conduct, however, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.  <u>See</u> <u>Vess</u> 317 F.3d at 1104.

The Court concludes that Plaintiffs' claims against KPMG allege a unified course of fraudulent conduct, are grounded in fraud, and thus Plaintiffs' § 11 claim must

satisfy the particularity requirement of Rule 9(b). See <u>Vess</u>, 317 F.3d at 1103-04; <u>Stac Elecs. Sec. Litig.</u>, 89 F.3d at 1404-05. Plaintiffs have not simply chose to allege some fraudulent and some non-fraudulent conduct against KPMG. Rather, Plaintiffs have consistently alleged throughout their complaint that KPMG has made a myriad of fraudulent misrepresentations, and then tries to allege that the same conduct was merely negligent when applied to their § 11 claim. See <u>Daou Systems, Inc.</u>, 411 F.3d at 1028 (relying on fact that the plaintiffs alleged myriad misrepresentations made by defendants in finding that their complaint sounded in fraud against those defendants).

Plaintiffs allege that KPMG actively participated in SeraCare's fraudulent efforts to artificially increase the value of their inventory and prematurely recognize revenue. (Consol. Compl. ¶¶ 56, 59, 61.) Plaintiffs allege that KPMG falsely stated its audits of SeraCare's 2003 and 2004 10-K's were performed according to GAAS, when in fact they failed to perform the most basic functions of an audit. (<u>Id.</u> ¶¶ 62-63.) They allege that KPMG refused to see, or simply ignored, obvious overstatements in inventories, numerous unsupported sales transactions, changes to inventory balances, capitalization of overhead expenses, and excess inventory. (<u>Id.</u> ¶ 233.) Plaintiffs also allege that despite KPMG's knowledge or reckless disregard regarding SeraCare's false and misleading financial statements, they failed to disclose material adverse facts about the financial condition and business prospects of SeraCare. (<u>Id.</u> ¶¶ 38, 331.) They also allege that KPMG knowingly or recklessly prepared false or misleading SEC filings or press releases, and knowingly or recklessly gave false information to security analysts, money and portfolio managers, and institutional investors. (<u>Id.</u> ¶ 330.) Additionally, as in <u>Daou Systems, Inc.</u>, Plaintiffs fully incorporated their previously averred allegations of fraud into their § 11 claim. (<u>Id.</u> ¶ 351.) <u>Cf.</u> <u>In re Daou Systems, Inc.</u>, 411 F.3d at 1028.

KPMG is only liable under Section 11 for those portions of the Registration Statement that purport to have been prepared or certified by the accountant. See <u>Monroe</u>, 31 F.3d at 774. Plaintiffs basis for KPMG's § 11 liability is the fact that

KPMG stated in the Registration Statement that SeraCare's 2003 and 2004 audited financial statements fairly presented SeraCare's financial position, as of September 30, 2003 and 2004, in all material respects.  (Consol. Compl. ¶ 152.)  This is the same unified course of fraudulent conduct Plaintiffs allege KPMG undertook throughout their complaint.  Plaintiffs' attempt to avoid the Court concluding that it is the same unified course of conduct as pleaded throughout the complaint by stating that their § 11 claim against KPMG is based solely on strict liability and/or negligence is an insufficient disclaimer.  See Stac Elecs. Sec. Litig., 89 F.3d at 1405 n.2 (nominal efforts to disclaim allegations of fraud with respect to § 11 claims are unconvincing where the gravamen of the complaint is plainly fraud).  Therefore, the Court concludes that Plaintiffs' suit against KPMG sounds in fraud, and Rule 9(b)'s heightened pleading standards apply to Plaintiffs' § 11 allegation against KPMG.

### 2.    Plaintiffs' Pleadings

Since the Court has determined that Plaintiffs complaint against KPMG sounds in fraud, Plaintiffs must demonstrate, with particularity, that the registration statement contained an omission or misrepresentation, and that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment.'  See In re Daou Systems, Inc., 411 F.3d at 1028.  As previously noted, Plaintiffs' may only bring a § 11 claim against KPMG based on those portions of the Registration Statement that purport to have been prepared or certified by KPMG.  See  Monroe, 31 F.3d at 774.

Plaintiffs allege that KPMG is liable under § 11 based on their statement in the Registration Statement that they audited SeraCare's balance sheets for the fiscal years 2003 and 2004, and the related statements of income, shareholders' equity, and cash flows for each of the years in the three-year period ended September 30, 2004, and found that they fairly present SeraCare's financial position in all material respects. (Consol. Compl. ¶¶ 253-54.)  Plaintiffs allege this statement was false based on the same arguments it alleged that this and similar statements were false in association with

its § 10(b) claim against KPMG.  (Id. ¶¶ 172-202.)  Therefore, the Court has already concluded that Plaintiffs have failed to allege with particularity that KPMG's statement was a misrepresentation.  Accordingly, the Court grants KPMG's motion to dismiss Plaintiffs' § 11 claim.

### C.    Plaintiffs' Section 11 Claim Against the Underwriter Defendants

Plaintiffs also allege that the Underwriter Defendants violated § 11.  (Consol. Compl. ¶¶ 351-62.)  Section 11 creates a private remedy against every underwriter to a security when any part of the registration statement, when it became effective, contains an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  See 15 U.S.C. § 77k(a)(5).

The Underwriter Defendants similarly argue that Plaintiffs' § 11 claim "sounds in fraud" and should therefore be dismissed for failure to adequately plead with particularity the circumstances constituting the claim, pursuant to Rule 9(b).  Plaintiffs again contend that their § 11 claim against the Underwriter Defendants is based on their allegation that the Underwriter Defendants negligently violated their duty to ensure the accuracy and completeness of the registration statement associated with the Secondary Offering, and therefore they are only required to plead a short and plain statement of their claim pursuant to Rule 8(a).

The Court concludes that Plaintiffs' complaint against the Underwriter Defendants also sounds in fraud.  Plaintiffs allege in the introductory paragraphs to their complaint that defendants, including the Underwriter Defendants (and KPMG), were motivated to engage in a fraudulent practice in order to increase SeraCare's financial covenants on their loans, acquire more companies, meet Wall Street's financial estimates, and push SeraCare's stock price higher. (Consol. Compl. ¶ 1, 3).  See Daou Systems, Inc., 411 F.3d 1029 (finding it notable that a plaintiff's first sentence in his complaint introduced a § 11 claim as resulting from a fraudulent scheme and course of business by defendants in determining the claim sounds in fraud).  Based on this early

allegation of a joint fraudulent practice amongst the defendants, the numerous subsequent allegations of fraud pertaining to other defendants, and the fact that Plaintiffs fully incorporate all of their previous allegations for purposes of their § 11 claim against the Underwriter Defendants, the complaint against the Underwriter Defendants sounds in fraud.

Therefore, to survive dismissal, Plaintiffs must demonstrate, with particularity, that the Registration Statement contained an omission or misrepresentation, and that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment. See id. Most of Plaintiffs' allegations that the Registration Statement contained misrepresentations are based on the same arguments the Court previously concluded were not plead with particularity, regarding SeraCare's alleged premature recognition of revenue, overvaluation of inventory, and improper capitalization of overhead costs to inventory. (Consol. Compl. ¶¶ 147-48.) The Court relies on its previous analysis in concluding that Plaintiffs have failed to allege with particularity that these misrepresentation were made.

Plaintiffs also allege that the Underwriter Defendants are liable under § 11 for misrepresentations made in SeraCare's 10-Q statements for the first two quarters of fiscal year 2005, regarding SeraCare's net sales of $27.8 million and net income of $3.7 million, that were included in the Registration Statement. (Id. ¶ 146.) Plaintiffs allege that on March 15, 2006, SeraCare admitted in a press release that these financial statements should no longer be relied upon, that the company expects to restate one or more of its financial statements for the first three quarters of fiscal 2005, and that the company believes that there are material weaknesses in its internal control over financing. (Id. ¶ 141.) Plaintiffs further allege that SeraCare publicly stated on March 27, 2006, that it needed to restate its financial statements because there were errors with respect to inventory valuation and the capitalization of overhead to inventory, and that the financial statements were false due to SeraCare's revenue recognition errors. (Id. ¶ 58.) Finally, Plaintiffs allege that MHM, the external auditor hired by SeraCare to

replace KPMG, sent a letter to SeraCare, attached to the complaint, addressing numerous concerns with the company's 2005 financial statements. (Id. ¶ 7, Ex. 7.) The addressed concerns included that SeraCare appeared to have made numerous unsupported changes to costs of items in its inventory and to quantities of inventory, and that there appeared to be an absence of any method or process to evaluate the inventory for potential excess quantities on hand. (Id.) The Court concludes that these allegations are sufficient to support with particularity that the Registration Statement contained material misrepresentations regarding SeraCare's net sales and net income for the first two quarters of 2005, and the Court also concludes that the affirmative defense of lack of causation does not appear on the face of the complaint with regard to these allegations. As previously stated, however, the other allegations in Plaintiffs' § 11 claim against the Underwriter Defendants are not plead with the requisite particularity. Accordingly, the Court grants without prejudice the Underwriter Defendants's motion to dismiss Plaintiffs' § 11 claim against them, other than the allegations based on SeraCare's quarterly reports for the first two quarters of 2005.

## III. Motion for Court to Review Motion for Sanctions and Supporting Documents in Camera

According to KPMG's application, as modified by its clarification, it asks that the Court review in camera a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure and supporting documents. KPMG asserts that in camera review and an order allowing it to file the motion and supporting documents under seal are necessary because the papers contain confidential, proprietary, and/or trade secret information of KPMG and SeraCare. In support of their application, KPMG submits the declaration of Bradley Monahan, the engagement partner assigned to the audits of SeraCare's financial statements. In response, Plaintiffs argue that any sanctions motion is premature, and KPMG has failed to show any compelling reasons to overcome the strong presumption of public access to court records. Further, Plaintiffs argue that KPMG's sanctions motion would only serve to improperly inject extrinsic evidence into

the pending motion to dismiss and compel the Court to conduct an in camera evidentiary hearing in violation of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A.    Legal Standard to File Documents Under Seal**

As the Ninth Circuit has noted, "courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n.7 (1978)). This right of access is justified by the interests of citizens in keeping watch on the workings of public agencies.  See id.  Outside of grand jury materials and warrant materials during an investigation, which have traditionally been kept secret, courts "start with a strong presumption in favor of access to court records."  Foltz v. State Farm Mut. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003).  To overcome this strong presumption, a party seeking to seal a record must show compelling reasons.  See id. at 1135.  Specifically, the party must articulate compelling reasons supported by specific factual findings that outweigh the history of public access and the public policies favoring disclosure.  See Kamakana, 447 F.3d at 1178-79.  A court must balance the competing interests of the public and the party seeking to file documents under seal.  See id. at 1179.  If after considering these interests the court decides to seal documents, it must base its decision on compelling reasons and it must articulate the factual basis for the ruling without relying on conjecture or hypothesis.  See id. (citing Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995)).

While "good cause" suffices to seal documents during discovery under Rule 26 of the Federal Rules of Civil Procedure, a showing of good cause, without more, will not satisfy the "compelling reasons" test.  See id.   This is because, unlike private documents in discovery, judicial records are public records to which the public is entitled to access by default.  See id.  Finally, the Ninth Circuit has carved out an exception to the presumption of access for previously sealed discovery documents

attached to non-dispositive motions.  <u>See</u> <u>id.</u> at 1179-80.  In short, a party seeking to keep secret documents attached to dispositive motions must meet the "compelling reasons" test, while a showing of "good cause" will keep previously sealed documents attached to non-dispositive motions sealed.  <u>See</u> <u>id.</u>

**B.    Analysis**

As an initial matter, KPMG's motion for sanctions seeks to strike all allegations against it from Plaintiffs' complaint.  (<u>See</u> Daniel S. Drosman Decl. Supp. Pls.' Opp. KPMG's Appl. (KPMG's proposed order).)  Accordingly, because the case against KPMG will be over if the Court grants its motion, KMPG's motion is dispositive. Therefore, KPMG must meet the compelling reasons test to justify sealing the motion for sanctions and supporting documents.  Here, KPMG has failed to meet the compelling reasons test.  Since the Court has granted KPMG's and the Underwriter Defendants' motions to dismiss, there is no complaint to strike allegations from.  The Court has, however, granted Plaintiffs leave to amend.  Under these circumstances, and at this stage of the proceedings, there is no compelling reason for the Court to review KPMG's sanctions motion and papers in camera.  Accordingly, the Court denies without prejudice KPMG's motion to file certain documents under seal.

<u>**Conclusion**</u>

For the reasons discusses, the Court **GRANTS WITHOUT PREJUDICE** KPMG's motion to dismiss Plaintiffs' Section 10(b) and Section 11 claims.  The Court **GRANTS WITHOUT PREJUDICE** the Underwriter Defendants' motion to dismiss Plaintiffs' Section 11 claim consistent with this order.  The Court **DENIES WITHOUT PREJUDICE** KPMG's motion to file certain documents under seal.  Plaintiffs have 30

/ / /

/ / /

/ / /

/ / /

/ / /

05-CV-2335

1   days from the date this order is filed to file an amended complaint correcting the

2   deficiencies of their complaint regarding their claims dismissed without prejudice.

3        IT IS SO ORDERED.

4   DATED:  March 19, 2007

5

6        _____
        MARILYN L. HUFF, District Judge
        UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   cc:  all counsel of record

26

27

28