**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re SERACARE LIFE SCIENCES, INC. SECURITIES LITIGATION, | **CASE NO. 05CV2335 JLS (CAB)** |
| | **ORDER (1) GRANTING IN PART, DENYING IN PART KPMG'S MOTION TO DISMISS, (2) DENYING THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS, and (3) GRANTING PLAINTIFFS' EX PARTE APPLICATION TO FILE NOTICE OF RECENT AUTHORITY** |
| Consolidated Proceedings | |
| | [Doc. Nos. 151, 155, 177] |

On June 11, 2007, plaintiffs Richard, Jana, David, John and Lauren Westlund, and Massachusetts State Guaranteed Annuity Fund ("Plaintiffs") filed a consolidated first amended complaint ("FAC") in the above-captioned suit alleging violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and § 11 of the Securities Act of 1933 ("Securities Act") against defendant KPMG LLP ("KPMG") and a violation of § 11 of the Securities Act against defendants CIBC World Markets Corp., Thomas Weisel Partners LLC, and William Blair & Co. LLC (collectively the "Underwriter Defendants").[1]  (Doc. No. 147.)  On July 16, 2007, KPMG filed a motion to dismiss Plaintiffs' FAC.  (Doc. Nos. 151-154.)  Also on July 16, 2007, the

_____

[1] Plaintiffs have subsequently settled their claims against other defendants originally named in this suit.  (Doc. Nos. 129, 167.)

- 1 -                                                         05-CV-2335

Underwriter Defendants filed a motion to dismiss Plaintiffs' § 11 claim.  (Doc. Nos. 155-56.)  On August 30, 2007, Plaintiffs filed oppositions to KPMG's and the Underwriter Defendants' motions.  (Doc. Nos. 161-63.)  On September 24, 2007, KPMG and the Underwriter Defendants each filed their respective reply brief.  (Doc. Nos. 170-73.)

The action was reassigned from the Hon. Marilyn L. Huff to the Hon. Janis L. Sammartino on September 27, 2007.  Plaintiffs filed an ex parte application to file a notice of recent authority on November 16, 2007.  (Doc. No. 177.)  KPMG opposed this application on December 3, 2007.  (Doc. No. 180.)  The matter is now fully briefed, and the Court finds it appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

For the following reasons, the Court **GRANTS** KPMG's motion to dismiss Plaintiffs' § 10(b) claim and **DENIES IN PART** KPMG's motion to dismiss plaintiffs' § 11 claim.   The Court further **DENIES** the Underwriter Defendants' motion to dismiss Plaintiffs' § 11 claim.  The Court **GRANTS** plaintiffs' ex parte application to file a notice of recent authority.

**Background**

For purposes of resolving this motion to dismiss, the Court accepts all factual allegations in the consolidated complaint as true.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007); Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).  This factual summary is taken in the light most favorable to Plaintiffs.  See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2, 931 (9th Cir. 2003).  Where appropriate, the Court has also considered documents attached to and incorporated into the complaint and has taken judicial notice of certain facts.  Cf. Tellabs, 127 S. Ct. at 2509 (in ruling on motion to dismiss "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Plaintiffs bring this securities class action on behalf of the purchasers of SeraCare Life Sciences, Inc.'s ("SeraCare") securities between May 14, 2003 and March 23, 2006. (FAC ¶ 1.) SeraCare is a manufacturer and supplier of biological materials and services essential for the use and manufacture of diagnostic tests and the discovery, development, and commercial production

- 2 -

of pharmaceuticals.  (Id. ¶ 50.)  The Underwriter Defendants are integrated financial services institutions that provide commercial and banking services and acted as underwriters to SeraCare's secondary public offering in May 2005 ("Secondary Offering"), which allowed SeraCare to collect $39 million in proceeds.  (Id. ¶¶ 7, 38-40.)  KPMG was SeraCare's external auditor from 2002 until KPMG was fired in August 2005. (Id. ¶¶ 42, 296.)  KPMG audited SeraCare's Form 10-Ks for fiscal years 2003 and 2004; was intimately involved in the preparation of SeraCare's 10-Qs during the class period, including the period ending June 30, 2005; provided accounting and auditing services in connection with the Secondary Offering; and provided tax, consulting, and acquisition services to SeraCare.  (Id. ¶¶ 42, 296-301.)  KPMG also met regularly with members of SeraCare's Audit Committee in 2003 (id. ¶ 323), and consented to be named as an expert in the registration statement for the Secondary Offering, in which KPMG stated that it audited SeraCare's 2003 and 2004 financial documents.  (Id. ¶ 42.)

In the course of KPMG's audits, it examined SeraCare's financial statements, evaluated its internal controls, and assessed the overall quality of its accounting and financial reporting procedures.  (Id. ¶ 70.)  KPMG's unqualified opinions included in SeraCare's 2003 and 2004 Form 10-K reports stated that it examined SeraCare's September 30, 2002, September 30, 2003, and September 30, 2004 balance sheets, and the related statements of operations and income, stockholders' equity, and cash flows.  In KPMG's opinion those financial statements fairly presented SeraCare's financial position in all material respects as of the relevant dates.  (See id. ¶¶ 330-32.)  KPMG represented that it performed its audits in accordance with generally accepted auditing standards ("GAAS") and SeraCare's financial statements satisfied generally accepted accounting principles ("GAAP").  (Id. ¶ 70, 330-32.)

On May 25, 2005, SeraCare filed its Prospectus and Registration Statement ("Registration Statement") pursuant to its Secondary Offering of 3.5 million shares of stock. (Id. ¶ 154.)  The Underwriter Defendants were co-lead underwriters for the Secondary Offering.  (Id. ¶¶ 160, 424.)  The Registration Statement contained a statement from KPMG indicating that they had audited SeraCare's September 30, 2003, and September 30, 2004 balance sheets, and the related statements of operations, stockholders' equity, and cash flows for each year in the three-year

period ending September 30, 2004, and that those statements fairly presented the financial position of SeraCare in all material respects, in conformity with GAAP.  (See id. ¶ 161.)

In August 2005, SeraCare fired KPMG and hired Mayer Hoffman McCann P.C. ("MHM") to replace KPMG. (Id. ¶ 296.)  Approximately four months later, MHM reported concerns regarding its uncompleted audit of SeraCare's balance sheet as of September 30, 2005, and the related statements of income, stockholders' equity, and cash flows for the year then ended.  (Id. ¶¶ 72, 296, 322, Ex. 7.)

On December 14, 2005, SeraCare announced that it could not timely file its Securities and Exchange Commission ("SEC") Form 10-K for fiscal year 2005.  (Id. ¶ 76.)  On December 20, 2005, SeraCare publicly announced MHM's findings and concerns regarding SeraCare's revenue recognition accounting policies and practices; SeraCare's accounting for and valuation of inventory; the timeliness, quality, and completeness of SeraCare's implementation and testing of its internal control over financial reporting; and the perception that certain board members were exerting undue influence on SeraCare's financial reporting process and on the audit process.  (Id. ¶ 79 & Ex. 18.)  On December 20, 2005, SeraCare's stock price fell from $19.30 to $10.04.  (Id. ¶ 80.)

On March 15, 2006, SeraCare terminated its Chairman of the Board of Directors, Chief Executive Officer, Secretary, Chief Financial Officer, and ordered the first three individuals to resign from the Board of Directors.  (Id. ¶ 84.) SeraCare also issued a Form 8-K report on March 15, 2006, announcing that its 10-Q reports for the quarters ending December 31, 2004, March 31, 2005, and June 30, 3005 should no longer be relied upon, and that it expected to restate one or more of those financial statements.  (Id. ¶ 83 & Ex. 18.)  The 8-K report also revealed that it was "possible that [SeraCare's] Audit Committee will, as a result of its continuing review, determine that previously issued financial statements for other periods may require corrections."  (Id.)  On March 22, 2006, the NASDAQ halted all trading of SeraCare's shares, and SeraCare filed for Chapter 11 bankruptcy.  (Id. ¶ 85.)

Plaintiffs allege two claims against KPMG: (1) an alleged violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and (2) an alleged violation of § 11 of the

- 4 -                                                                                      05-CV-2335

Securities Act of 1933, 15 U.S.C. § 77k.  (Id. ¶¶ 395-402, 419-29.)  The sole claim brought against the Underwriter Defendants is pursuant to § 11 of the 1933 Securities Act.  (Id. ¶¶ 419-29.)

**Discussion**

**I.      Requests for Judicial Notice and to Consider Certain Documents under the Incorporated by Reference Doctrine**

Before addressing the merits of the motions to dismiss, the Court must resolve KPMG's requests for the Court to take judicial notice of certain documents and to consider certain documents under the incorporated by reference doctrine, including (1) several of SeraCare's Form 10-K and 10-Q filings with the SEC between 2003 and 2005; (2) Accounting Research Bulletin 43, Chapter 4 ("ARB 43"); (3) SEC Staff Accounting Bulletin No. 104 ("SAB 104"); (4) American Institute of Certified Public Accountants ("AICPA") Professional Standard AU § 722.03; (5) several public announcements made by SeraCare between December 14, 2005 and March 23, 2006; (6) SeraCare's April 7, 2006 bankruptcy court Supplemental Brief Supporting Motion for Use of Cash Collateral; and (7) the Declaration of Cathryn Low in Support of SeraCare's Motion for Order Authorizing Use of Cash Collateral in association with SeraCare's bankruptcy proceedings. (KPMG LLP's Request for Judicial Notice ("RJN"), at 1-6.)  Plaintiffs do not object to the Court taking judicial notice of the existence of any of these documents, but do object to the Court taking judicial notice of SeraCare's 2003 and 2004 Form 10-K reports to the extent that KPMG asks the Court to take judicial notice of disputed facts pertaining to the alleged falsity of these financial statements.  Plaintiffs also object to the Court taking judicial notice of SeraCare's public announcements to the extent that KPMG seeks judicial notice of facts pertaining to KPMG's loss causation defense.

When determining a motion to dismiss for failure to state a claim for relief pursuant to FRCP 12(b)(6), a district court cannot consider matters outside the complaint except for authenticated documents that have been incorporated into the complaint and facts that are subject to judicial notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Judicial notice may be taken of facts not subject to reasonable dispute in that they are "generally known" in the community or "capable of accurate and ready determination by reference to sources whose

05-CV-2335

accuracy cannot be reasonably questioned." See Fed. R. Evid. 201(b). For instance, a federal court may take judicial notice of other courts' proceedings if the proceedings directly relate to the matters before the court. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992); see also Mullis v. U.S. Bankr. Court for Dist. of Nev., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987) (taking judicial notice of pleadings, orders, and other papers on file in the underlying bankruptcy case); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (concluding that, on motion to dismiss, court may take judicial notice of matters of public record outside pleadings).

The "incorporation by reference" doctrine permits district courts to consider, in connection with a motion to dismiss, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to plaintiff's pleading. See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see also Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (holding that documents not physically attached to the complaint may nonetheless be considered by the court on a 12(b)(6) motion to dismiss if the complaint refers to such documents, the documents are "central" to plaintiff's claim, and no party questions the authenticity of the copy attached to the 12(b)(6) motion).

The Court concludes that the contents of SeraCare's Form 10-K and 10-Q filings with the SEC between 2003 and 2005 are referred to in the FAC and no party has questioned their authenticity. Accordingly, the Court concludes that it may consider these documents pursuant to the incorporation by reference doctrine. The Court also takes judicial notice of ARB 43, SAB 104, AICPA Professional Standard AU § 722.03, SeraCare's April 7, 2006 bankruptcy court Supplemental Brief Supporting Motion for Use of Cash Collateral, and the Declaration of Cathryn Low in Support of SeraCare's Motion for Order Authorizing Use of Cash Collateral in association with SeraCare's bankruptcy proceedings. These documents are capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned. The Court also concludes that it may take judicial notice of the existence of several public

05-CV-2335

announcements made by SeraCare between December 14, 2005 and March 23, 2006.[2]

## II.      Motion to Dismiss

KPMG and the Underwriter Defendants have moved to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  A motion to dismiss for failure to state a claim pursuant to section 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims in the complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 12(b)(6) permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support plaintiff's theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  While a complaint does not need detailed factual allegations to survive a motion to dismiss, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  Rather, to survive a motion to dismiss pursuant to Rule 12(b)(6), factual allegations must be sufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact.  See id. at 1965; see also Tellabs, Inc., 127 S. Ct. at 2509 ("faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true").

Dismissal is proper if a complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation.  See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983).  Furthermore, a court may not "supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). If a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

_____

[2] To the extent that KPMG attempts to demonstrate that any public statements by SeraCare preceding stock price drops did not touch upon any alleged error in SeraCare's 2003 and 2004 financial statements, the Court will deal with that issue infra.

**A.      Plaintiffs' Section 10(b) Claim Against KPMG**

Plaintiffs' first claim alleges that KPMG violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, by making false and misleading statements and failing to disclose material adverse facts regarding SeraCare's financial status which caused purported class members to purchase SeraCare's stock at inflated prices, causing them damages. Section 10(b) of the Exchange Act makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" In re Daou Sys., Inc., 411 F.3d 1006, 1014 (9th Cir. 2005). "SEC Rule 10b-5, promulgated under the authority of section 10(b), in turn, provides: It shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." Id. (citing 17 C.F.R. § 240.10b-5). Therefore, the elements of a Rule 10b-5 claim are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss. See id.

Claims brought under Rule 10b-5 and Section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). See id. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Pursuant to FRCP 9(b), a pleading suffices "if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989); see also Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) ( To meet the particularity requirement of Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the

charge and not just deny that they have done anything wrong."). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." Moore, 885 F.2d at 540.

Additionally, the Private Securities Litigation Reform Act ("PSLRA"), enacted in 1995, amended the 1934 Securities Exchange Act to require that a complaint in a private securities fraud suit plead falsity and scienter with particularity. See id.; see also Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004). "A securities fraud complaint must now 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Daou Systems, Inc., 411 F.3d at 1014 (citing 15 U.S.C. § 78u-4(b)(1)). Further, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. (citing 15 U.S.C. § 78u-4(b)(2)). "The stricter standard for pleading scienter naturally results in a stricter standard for pleading falsity, because 'falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts,' and the two requirements may be combined into a unitary inquiry under the PSLRA." Id. (citing In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir. 2002)). Therefore, the complaint alleging a violation of Section 10(b) and Rule 10b-5 must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness. See id. at 1014-15 (citing Silicon Graphics, 183 F.3d at 974).

The Supreme Court has recently clarified that, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court "must take into account plausible opposing inferences." Tellabs, 127 S.Ct. at 2509. The Court explained that the strength of an inference depends on its particular context: "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Id. at 2510. A complaint survives a motion to dismiss under the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one

05-CV-2335

could draw from the facts alleged." Id.

### 1.    Material Misrepresentations or Omissions

Plaintiffs allege that KPMG made three categories of misstatements.  First, Plaintiffs allege that KPMG is responsible for SeraCare's misstatements the unaudited 2005 quarterly financial statements because KPMG "substantially participated" in the statements' production.  (FAC ¶¶ 125-31, 297, 330.)   Second, they allege that, in SeraCare's 2003 and 2004 10-Ks, and also in the Registration Statement, KPMG misrepresented that SeraCare's 2002-2004 financial statements fairly presented the company's financial position in all material respects in conformity with GAAP, when, in fact, SeraCare's financial statements contained improperly recognized revenue and overvalued inventory, and, therefore, KPMG did not have a reasonable basis for making its statements.  (Id. ¶¶ 101-102, 123-24, 161-62, 330-33.)  Third, Plaintiffs allege that, in SeraCare's 2003 and 2004 Form 10-Ks and in its Registration Statement, KPMG misstated that it audited SeraCare's financial documents according to GAAS.  (Id. ¶¶ 330-33.)

KPMG argues that Plaintiffs have failed to plead with particularity that SeraCare's audited 2003 and 2004 financial statements contained misrepresentations, that KPMG failed to audit SeraCare's financial statements according to GAAS, or that KPMG should be liable for any statements made in SeraCare's unaudited 2005 quarterly statements.

### a.    KPMG's Liability for SeraCare's 2005 10-Qs

Plaintiffs allege that KPMG is liable for materially false statements made in SeraCare's first three quarterly statements of 2005.  (FAC ¶¶ 65-68, 297-300.)  Although Plaintiffs' do not allege that KPMG made any public statements regarding those quarterly reports, nor do they allege that KPMG was mentioned in them, Plaintiffs argue that KPMG is liable under a "substantial participation" theory.  An accounting firm's substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the accounting firm actually making the statements.  See In re Software Toolworks Inc., 50 F.3d 615, 628-29 & n.3 (9th Cir. 1994); see also Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061 n.5 (9th Cir. 2000).  In Software Toolworks, the Ninth Circuit held that a client letter to the SEC indicating that the letter was prepared after extensive review and

05-CV-2335

discussions with an accounting firm, and referring the SEC to two partners of the accounting firm for further information, was sufficient to sustain a primary cause of action against the accounting firm under section 10(b).  See id. at 628 n.3.

Plaintiffs allege that KPMG participated in creating and preparing SeraCare's quarterly financial statements and Form 10-Qs throughout the class period, including the first three quarters of 2005.  (FAC ¶ 65.)  This involvement allegedly included performing fieldwork, giving feedback, revising, checking final changes, and signing off on Form 10-Qs and accompanying press releases.  (Id. ¶¶65, 297.)  KPMG also allegedly participated in quarterly "kick-off meetings" with SeraCare's management and worked extensively with management in reviewing and analyzing the Company's quarterly activity, including reviewing the design and operation of SeraCare's internal controls for deficiencies and material weaknesses, and determining whether the financial statements contained the necessary public disclosures.  (Id. ¶¶ 65, 66, 297.)

Plaintiffs also attached documents to their complaint that allegedly demonstrate KPMG's participation in the preparation of SeraCare's quarterly financial statements.  Exhibit 10, entitled "Q2 04 10-Q Reporting Schedule," indicates specific tasks related to preparation of the quarterly financials assigned to KPMG, including responsibility for signing off on the earnings release, fieldwork, providing SeraCare feedback on its 10-Q and financial statements, checking changes, and signing off on the 10-Q.  (Id. ¶ 65 & Ex. 10.)  Exhibit 12 is a fax from KPMG to SeraCare which appears to show some checking and editing of SeraCare's financial statements for the second quarter of 2005.  Exhibit 13 is a February 3, 2005 e-mail from KPMG regarding disclosures that KPMG requested for insertion into SeraCare's 10-Q.  (Id. ¶ 65 & Ex. 13.)  Exhibit 15 contains the minutes from various telephonic meetings of SeraCare's audit committee, which were attended by an engagement partner, concurring partner and audit manager from KPMG.  At these meetings, the engagement partner explained KPMG's review of SeraCare's quarterly financial statements.

The Court concludes that Plaintiffs' allegations are insufficient to allege with particularity the degree of substantial participation or intricate involvement required to make KPMG primarily liable for any misstatements in SeraCare's 2005 10-Qs.  Plaintiffs' allegations that KPMG

participated in editing and reviewing SeraCare's 10-Qs, and that KPMG evaluated them, falls significantly short of the type of participation sufficient to establish liability under a substantial participation theory. See Software Toolworks Inc., 50 F.3d at 629 (concluding that sufficient evidence was presented to conclude that the accountants had access to all of the information that was available to their clients and deliberately chose to conceal the truth). Significantly, Plaintiffs do not allege that KPMG "audited" SeraCare's 10-Qs, but that KPMG reviewed SeraCare's quarterly activity. (FAC ¶¶ 9, 297.) "A review involves an intermediate level of scrutiny in which the auditor provides 'limited assurance' on the entity's financial statements." See Otto v. Pa. State Educ. Ass'n–NEA, 330 F.3d 125, 133 (3d Cir. 2003). However, a review "does not provide assurance that the accountant will become aware of all significant matters that would be disclosed in an audit." Id. (internal quotation and citation omitted); see In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d 628, 666 (S.D.N.Y. 2004) ("A review may bring to the accountant's attention significant matters affecting the interim financial information, but it does not provide assurance that the accountant will become aware of all significant matters that would be disclosed in an audit."); In re Rent-Way Sec. Litig., 209 F. Supp. 2d 493, 503-04 (W.D. Pa. 2002) (concluding that auditor could not be held primarily liable under § 10(b) and Rule 10b-5 based on its review and approval of corporation's unaudited quarterly reports, since auditor had no duty to insist that corporation correct inaccuracies in unaudited quarterly reports). Even viewed in the light most favorable to Plaintiffs, their allegations and exhibits do not allow an inference that KPMG played such a significant role in preparing SeraCare's 10-Qs that they had access to all of the information that was available to SeraCare, such that KPMG may be held primarily responsible for SeraCare's misstatements. Therefore, Plaintiffs have failed to allege particularly that KPMG made any material misrepresentations in association with SeraCare's three 2005 10-Qs.

### b.    SeraCare's 2003 and 2004 Audited Financial Statements

### 1.    Fairly Presented Financial Position

Defendants argue that Plaintiffs have failed to plead with sufficient particularity facts demonstrating that KPMG's statement that SeraCare's 2003 and 2004 audited financial statements fairly presented SeraCare's financial position is a material misstatement. Plaintiffs counter that

KPMG's statements were false because: (1) at the end of each quarter during fiscal years 2003 and 2004, SeraCare shipped products out before customers wanted the product so that the revenue could be recognize during that quarter, (2) on certain major contracts SeraCare recognized revenue before the product was shipped, and (3) SeraCare overvalued its inventory.

### i.    Early Shipping

If properly pled, overstated revenues on financial statements may constitute the basis of a material misrepresentations for purposes of a § 10(b) claim because, under GAAP, revenue must be earned before it can be recognized. See Daou Systems, Inc., 411 F.3d at 1016.  When pleading irregularities in revenue recognition, plaintiffs should allege such basic details as (1) the approximate amount by which revenues and earnings were overstated, (2) the products involved in the contingent transaction, (3) the dates of such transactions, or (4) the identities of any of the customers or company employees involved.  See id.  A plaintiff does not necessarily need to allege each of these details, but must allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue. See id. at 1017.

Securities fraud plaintiffs may rely upon confidential witnesses to support allegations of securities fraud so long as the confidential sources are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged and the complaint contains adequate corroborating details.  See, e.g. Daou Systems, Inc., 411 F.3d at 1015-16 (concluding securities fraud plaintiffs described their confidential witnesses with sufficient particularity by numbered each witness and describing their job description and responsibilities).

Plaintiffs allege that, according to CW-1, at the end of each quarter during the class period, SeraCare prematurely booked revenue equaling or exceeding $500,000 by shipping products to customers  before the customers wanted them.  (Id. ¶¶ 225-26.)  Plaintiffs also allege that CW-7 corroborates CW-1's statements that it was common practice for SeraCare to ship products prematurely at the end of the quarter in order to book revenue.  (Id. ¶¶ 228-230.)  Furthermore, CW-7 stated that he heard Michael Crowley, SeraCare's CEO, and other senior management as

SeraCare state, "The customer doesn't want the shipment until mid-month next month, but let's send it now because we need to make our numbers for the quarter." (Id. ¶ 229.) Plaintiffs attached to their complaint a September 27, 2003 e-mail from Crowley to numerous parties stating, "We have two more days of the quarter [sic] and continue your efforts to ship or book as much revenue as we can before the 30th." Moreover, Plaintiffs allege that Crowley called CW-2 in late September 2003 and told him to do anything he could to ship product before the end of September, the end of SeraCare's fiscal year, because the company was $120,000 under analyst consensus estimates. Plaintiffs allege that this practice violated SEC Staff Accounting Bulletin ("SAB") Topic 13. According to SAB 13 § A1, revenue should not be recognized unless there is persuasive evidence that an arrangement exists, delivery has occurred or services have been rendered, the seller's price to the buyer is fixed or determinable, and collectibility is reasonably assured. (FAC ¶ 239.)

The Court concludes that these allegations fail to demonstrate with sufficient particularity that KPMG's statement that SeraCare's 2003 and 2004 audited financial statements fairly presented SeraCare's financial position is a material misstatement. Although Plaintiffs do make a particular allegation about the total amount of the allegedly prematurely recognized revenue, Plaintiffs fail to allege particular details about specific transactions. Rather, Plaintiffs make numerous unparticularized allegations that SeraCare prematurely shipped products to their customers and frequently shipped more products towards the end of a quarter than at other times, while those customers frequently complained and/or returned the products. Plaintiffs also mention in a cursory fashion that some of the customers were Merck, Cascade Biologics, IDEXX and Abbott Laboratories, and some of the products were albumin and fetal bovine serum. But, Plaintiffs fail to provide particularized allegations concerning a specific product or a specific customer that demonstrate a significant inflation of revenues. Plaintiffs also do not allege a time period more particular than a year in which the early shipment allegedly occurred.

Furthermore, Plaintiffs repeatedly allege that SeraCare shipped products "before the customer wanted," rather than alleging that the products were shipped in violation or in the absence of an existing arrangement with the customers. Similarly, Plaintiffs' allegations that

05-CV-2335

SeraCare shipped more products at the end of quarters than at other times, and that SeraCare's CEO encouraged such actions, does not allege a violation of SAB 13 unless Plaintiffs also allege that those shipments violated or were in the absence of an existing agreement with the recipients of the products.  Therefore, the Court concludes that Plaintiffs have failed to make particularized allegations demonstrating that KPMG's statements that SeraCare's 2003 and 2004 audited financial statements fairly presented SeraCare's financial position were a misstatement, based on alleged violations of SAB 13 due to premature shipments and the associated revenue recognition.

### ii.      Wyeth Transaction in 2003

Plaintiffs also allege that KPMG's statement that SeraCare's 2003 audited financial statements fairly presented SeraCare's financial position is false because SeraCare recognized $1 million in revenue from the sale of albumin to Wyeth Pharmaceuticals, Inc. ("Wyeth") in March 2003, even though the albumin was not shipped to Wyeth until after September 30, 2003 (i.e., in fiscal year 2004).  (FAC ¶ 205.) This recognition of revenue allegedly violated Financial Accounting Standards Board Statement of Concepts ("FASCON") No. 5 ¶¶ 83-84, which states that revenue is commonly recognized at the time of sale, usually at the time of delivery, and SAB Topic 13 that revenue should generally not be recognized until delivery[3] has occurred.  (FAC ¶¶ 236-41.)

Plaintiffs allege that CW-1 can verify the fact that the albumin was not shipped to Wyeth until after September 30, 2003.  (Id. ¶ 205.)  CW-1 was responsible for SeraCare's Wyeth account and kept track of "drop shipments" from Grifols, the manufacturer of the albumin, to customers such as Wyeth.  (Id. ¶¶ 185, 208 & Ex 23.)  Plaintiffs allege other corroborating details, such as the fact that Bob Markolina of Wyeth in St. Louis arranged the shipping; Grifols contacted CW-1 in September 2003 informing him that the product was ready to be shipped; after leaving Grifols, the shipment landed in Chicago; and CW-1 was kept informed of the status of the shipment through phone calls, faxes, and e-mails from the United States Customs Service and employees of Wyeth.  (Id. ¶ 208.)   Plaintiffs also allege that an e-mail attached to the complaint is at least

---

[3] Delivery occurs when the customer takes title and assumes the risks and rewards of ownership.

05-CV-2335

consistent with their allegation that the albumin had not been shipped by September 30, as it states that the product had not cleared "FDA hold" as of Friday morning, September 26, 2003. (Id. Ex. 8.)

CW-1 was employed by SeraCare from approximately September 1998 through July 2005, first as an albumin and plasma salesperson, and later as Vice President of Bioprocessing Products beginning in March 2005. (FAC ¶ 185.) CW-1 oversaw and conducted sales of the product line to customers and tallied all sales and shipments in his division. (Id.) CW-1 was responsible for the Wyeth account, with duties including taking orders, meeting regularly with Wyeth representatives, and monitoring shipments and deliveries of product to Wyeth. (Id. ¶¶ 185, 200.) CW-1's contacts at Wyeth were Tim Sparks and David Sponseller. (Id. ¶ 200.)

The Court concludes that CW-1 is described with sufficient particularity to support the probability that a person in his position would possess the information alleged in the FAC regarding the 2003 Wyeth transaction, and that the complaint contains adequate corroborating details. Furthermore, although Defendants argue that SAB Topic 13, as amended by SAB 104, distinguishes among various sales contracts for when revenue can be recognized, this argument is moot because Plaintiffs allege that SeraCare did not even ship the albumin until after September 30, 2003. (FAC ¶ 205.) Also, the Court concludes that, for purposes of a motion to dismiss, it may not consider statements in SeraCare's 2003 10-Ks for their truth. See Fed. R. Evid. 201; Lee, 250 F.3d at 690. Specifically, the Court cannot consider the 10-K's statement that SeraCare records revenue upon shipment of its products. Finally, Defendants' arguments regarding the credibility of CW-1 are misplaced in a motion to dismiss, where the Court must accept Plaintiffs' alleged facts as true, even if they are doubtful in fact. See Twombly, 127 S. Ct. at 1965.

The Court also concludes that Plaintiffs have alleged enough information regarding the 2003 Wyeth transaction to demonstrate that the alleged violation of GAAP was not minor or technical in nature, but rather constituted a significant inflation of revenue. Furthermore, the allegations regarding this transaction were specific enough to give KPMG notice of the particular facts alleged such that KPMG can defend against the claim.

**iii.    Biogen Transaction in 2003**

- 16 -

Plaintiffs also allege that CW-1 is aware that SeraCare prematurely recognized revenue in association with a shipment of albumin to Biogen in 2003. (FAC ¶ 212.) Plaintiffs allege that Biogen cancelled their order for $385,000 of albumin in mid-2003, but SeraCare sent the product anyway and recognized the revenue. (Id.) The matter was allegedly resolved by the parties agreeing nine months later that Biogen would pay SeraCare $280,000, after which Biogen shipped the product back to SeraCare. (Id.) The Court finds that the FAC describes CW-1 with sufficient particularity, especially because of CW-1's personal involvement in reporting the cancellation of Biogen's order and receiving the instruction to ship regardless. Furthermore, the Court finds that Plaintiffs have alleged enough information to demonstrate that the Biogen transaction was not a minor or technical violation of GAAP, but rather constituted a significant inflation of revenue. Therefore, the Court concludes that the allegations regarding this transaction are specific enough to give KPMG notice of the particular facts alleged such that KPMG can defend against the claim and not just deny that they have not done anything wrong.

**iv.     Roche and BioVitrum Transactions in Fiscal Year 2005**

Plaintiffs allege that SeraCare prematurely recognized revenue from a sale of 72 blood panels to Roche Diagnostics ("Roche") and a sale of albumin to BioVitrum in fiscal year 2005. (FAC ¶¶ 213-21.) These sales and the associated revenue recognition occurred during SeraCare's fiscal year 2005. Therefore, these allegations cannot demonstrate that KPMG made a misstatement in SeraCare's 2003 and 2004 audited financial statements. Furthermore, the Court has already concluded that Plaintiffs have failed to allege sufficient facts to demonstrate KPMG's primary liability for SeraCare's unaudited 2005 quarterly statements. Accordingly, the Court concludes that Plaintiffs have failed to allege an actionable misstatement by KPMG regarding these transactions to support Plaintiffs' § 10(b) claim.

**v.     Inventory Accounting**

Defendants argue that Plaintiffs have failed to plead with sufficient particularity the falsity of KPMG's statement that SeraCare's 2003 and 2004 audited financial statements fairly presented SeraCare's financial position. Plaintiffs allege that the statement is false because SeraCare inflated the value of its inventory on its financial statements by improperly capitalizing expenses to

- 17 -

inventory in violation of chapter 4 of ARB 43, and by failing to write down or record adequate reserves on its inventory.

According to CW-12, during fiscal years 2003 through 2005, SeraCare overstated its inventory by capitalizing a significant portion of its selling, general, and administrative ("SG&A") expenses to inventory and by valuing impaired inventory at its full, non-impaired value. (FAC ¶¶ 243, 255.) CW-12 states that, at the beginning of fiscal year 2005, KPMG valued its inventory at $28 million, but that, after accounting for improper capitalization of expenses and deducting value for impaired inventory, the real value of the inventory was about $12 million. (Id. ¶ 255.) CW-12 also states that a third party consultant valued SeraCare's inventory at $8 to $10 million. (Id. ¶ 261.)

Plaintiffs allegations regarding improper capitalization of expenses to inventory also include CW-6's observations that, by looking in SeraCare's computer system in 2004, he observed that SeraCare improperly added overhead costs to the inventory SeraCare received via its acquisition of BioMedical Resources, Inc. ("BMR") in July 2003. (Id. ¶¶ 250, 313.) He adds that an item valued at $1.00 before the BMR acquisition was assigned a value of $13.00 after the acquisition. (Id. ¶ 250.) CW-2 also states that, by reviewing new inventory lists in 2004, he became aware that SeraCare improperly added excess overhead costs to the value of the BMR inventory. (Id. ¶ 251.) CW-1 states that SeraCare automatically increased the value of a product by 10% after the BMR acquisition. (Id. ¶ 252.) He also states that SeraCare would sometimes increase the value of a product after it was sold. (Id.) CW-1 states that SeraCare's CEO directed SeraCare's chief financial officer ("CFO") to add costs to inventory, which the CFO did. (Id.) Plaintiffs allege that CW-7 noticed that inventory values significantly increased in mid-2004, such that plasma nearing expiration increased in value from $5.00/ml to $20.00/ml. (Id. ¶ 254.) CW-7 was also told to do a physical inventory count to increase inventory values from $5 to $6. (Id. ¶ 253.)

Regarding impaired inventory, Plaintiffs allege that SeraCare did not properly value its inventory of plasma. (Id. ¶ 243.) According to CW-12, SeraCare failed either to write off expired plasma or to maintain an adequate inventory reserve for the plasma. (Id.) Plaintiffs similarly

- 18 -

allege that, according to CW-3, SeraCare valued "virtually worthless" plasma that did not contain any marketable antibodies the same as plasma containing marketable antibodies.  (Id. ¶¶ 244-45.)

CW-12 worked in SeraCare's finance department from March 2006 to October 2006, reporting to Tom Lawlor, then-acting CEO of SeraCare.  (Id. ¶ 196.)  SeraCare's director of finance, Kia Lodel, reported to CW-12.  (Id.)  CW-12 was hired by SeraCare to evaluate and investigate SeraCare's historical financial statements for preparing the Company's bankruptcy filings.  (Id.)  As part of those job duties, CW-12 interviewed various SeraCare employees regarding SeraCare's historic financial statements and accounting treatments, including issues concerning inventory valuation, the amount of inventory carried on SeraCare's books during the class period and the capitalization of expenses (including SG&A expenses) to inventory.  (Id.)  The Court concludes that CW-12 is described with sufficient particularity to support the probability that a person in that position would possess the information alleged in the FAC and that the complaint contains adequate corroborating details.

Nonetheless, the Court finds that dismissal of the inventory accounting claim is appropriate.  Plaintiffs make particularized allegations about SeraCare's overvaluation of its inventory at the beginning of fiscal year 2005, but these allegations do not pertain to KPMG's statements about the accuracy of SeraCare's 2003-04 audited financial statements.  Plaintiff's other allegations regarding SeraCare's allegedly overvalued inventory lack sufficient particularity for the Court to determine whether alleged GAAP violations were minor or technical in nature, or to give KPMG notice of the particular misconduct which is alleged to constitute the fraud charged.

### vi.   BBI Transaction

Plaintiffs allege that SeraCare improperly valued inventory acquired pursuant to its September 2004 acquisition of Boston Biomedia, Inc. ("BBI").  Specifically, SeraCare allegedly valued the inventory on its September 30, 2004 10-K at the same carrying value assigned in the proposed BBI closing balance sheet (a net value of $2.4 million).  This valuation allegedly violated Financial Accounting Standard 141, which required that the inventory be valued at its fair market value.  (Id. ¶ 267.)  Plaintiffs allege that KPMG had knowledge of this improper

05-CV-2335

accounting practice because KPMG reviewed, evaluated, and signed off on BBI's financial statements in connection with the acquisition. (Id. ¶¶ 69, 301.)  Plaintiffs allege that SeraCare's fraudulent manipulation of the acquired inventory resulted in a $552,000 inventory reserve liquidation in the second quarter of 2005, and a $459,000 inventory reserve liquidation in the third quarter of 2005.  (Id. ¶ 339.)

Defendants argue that Plaintiffs have failed to plead with sufficient particularity that KPMG's statement that SeraCare's 2004 audited financial statements fairly presented SeraCare's financial position is false.   The Court finds otherwise.  These allegations are particular enough to permit the Court to determine that the alleged GAAP violation is not minor or technical in nature and to give KPMG notice of the particular misconduct which is alleged to constitute the fraud charged.  KPMG's argument that Plaintiffs' allegations misapply FAS 141 is not appropriate for a motion to dismiss where the Court must accept Plaintiffs' allegations as true.

**2.     Conducted Audits in Accordance to GAAS**

Defendants argue that Plaintiffs have failed to allege with sufficient particularity that, in SeraCare's 2003 and 2004 10-Ks, KPMG falsely stated that it audited SeraCare's financial statements according to GAAS.  Plaintiffs' complaint alleges that KPMG violated the generally accepted auditing standard that an audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. (Id. ¶ 320.)  Therefore, the statement that KPMG's audit was performed according to GAAS was misleading.  (Id.)

Plaintiffs support their claim by alleging that CW-7, a warehouse logistics manager at SeraCare's corporate headquarters from 2001 to October 2005, worked with KPMG during SeraCare's annual physical inventory audits at its Oceanside facility.  (FAC ¶¶ 303-04.)  According to CW-7, KPMG only participated in these physical counts "from afar," reviewing specific inventory worksheets on which SeraCare employees recorded the inventory figures during the process to spot check the data being recorded.  (Id. ¶ 304.)  CW-7 states that KPMG's auditors never asked questions of the SeraCare employees who were actually physically counting the inventory, but rather directed its questions only to members of SeraCare's management.  (Id.)  CW-7 also states that KPMG representatives spent most of their time during the counts in the

office located in the Oceanside facility's warehouse, and that although KPMG did participate in some of the counts, SeraCare employees, including CW-7, did all the physical counting. (FAC ¶ 306.)

CW-7 recalled one particular instance where two KPMG representatives test counted the inventory at SeraCare's Miramar facility where 90% of SeraCare's bulk units were kept. (Id. ¶ 307.) The KPMG representatives reviewed an inventory list that CW-7 had prepared and asked CW-7 to bring out two of the approximately 96 palettes on the list. (Id.) The KPMG employees then asked CW-7 to count the items on each of these palettes and observed CW-7 count the units, but did not stand near him and did not physically count the units themselves. (Id.) The entire test count lasted approximately 30 minutes. (Id.) CW-7 states that other KPMG employees were disappointed about the way the test count was handled, but that he believes no further test counting occurred because he had the key to the Miramar facility, which KPMG never asked for. (Id.) CW-7 states that, based on his experience, he does not believe that KPMG was consistently and actively involved in the test counts. (Id. ¶ 308.)

CW-2, a senior executive with BMR who worked for SeraCare from 2003-2005 and was the main contact with KPMG at SeraCare's Hatboro facility, states that during an inventory count at Hatboro in 2004, SeraCare employees performed the physical counts while KPMG oversaw the process. (Id. ¶¶ 313-14.) CW-2 particularly states that one of KPMG's accountants who overlooked the inventory count but did not physically count the items was "some girl who was fresh as a daisy and did not know squat." (Id. ¶ 315.)

CW-8 participated in annual and other periodic physical inventories at SeraCare's Oceanside and Miramar facilities after he was promoted to Quality Assurance Supervisor between 2003 and 2006. (FAC ¶ 309.) According to CW-8, KPMG representatives were present each day of the inventory counts at the two facilities for only a couple of hours and stood as far back as possible from the actual physical counting. (Id ¶ 311.) He adds that, at the most, KPMG performed spot checks at both facilities of the paperwork being prepared from the physical counts that SeraCare employees conducted by checking to see if the recorded figures matched the figures called out by SeraCare employees. (Id. ¶ 311.) CW-8 states that KPMG representatives did not

05-CV-2335

always follow SeraCare employees from room to room, and SeraCare's employees did not go out of their way to get a KPMG representative if they found a discrepancy when counting inventory. (Id. ¶ 312.)

CW-13, SeraCare's Vice President of Commercial Development from August 2004 until January 3, 2006, allegedly discussed inventory issues with senior management, including SeraCare's CFO and CEO. (Id. ¶¶197, 316-317.)  According to CW-13, senior management was extremely surprised by the way that KPMG allowed SeraCare to value the inventory at the Oceanside facility because SeraCare could not understand how KPMG treated inventory on the financial statements.  (Id. ¶ 316.)  After MHM replaced KPMG in August 2005, SeraCare's CFO told CW-13 that MHM was uncovering "a lot": a member of SeraCare's Board of Directors commented that MHM was beginning to probe too much and ask questions that KPMG never asked.  (Id. ¶ 317.)

Plaintiffs also attach a February 8, 2006 memorandum entitled "Oceanside Inventory Open Items," in which MHM notes that it "has not received a response [from SeraCare management] regarding the problems we summarized with identifying our selected items on the FY 2004 inventory detail listing."  (Id. ¶ 319 & Ex. 28 at 212.)  The memorandum notes that MHM sought an "explanation for $700k variance between TB and the inventory listing for totals as of 9/30/2004" for BBI.  (Id. at 218.)  Additionally, Plaintiffs argue that their allegation that MHM wrote SeraCare in December 2005 and stated its concern that SeraCare was not prepared to implement portions of the Sarbanes-Oxley Act supports their claim that KPMG's statement that it performed audits in conformity with GAAP was a misstatement.  (Id. ¶ 322 & Ex. 7.)

The Court concludes that Plaintiffs describe these confidential witnesses with sufficient particularity to support the probability that people in their positions would possess the information alleged in Plaintiffs' complaint and that the complaint contains adequate corroborating details. The Court further concludes that these allegations particularly describe the reasons why KPMG's statement that its audits conformed with GAAS is allegedly misleading to give KPMG sufficient notice to defend against the charge.

//

05-CV-2335

**2.** **Scienter**[4]

Since the Court has concluded that at least some of Plaintiffs allegations regarding KPMG's misstatements are sufficiently pled to survive KPMG's motion to dismiss, the Court will consider KPMG's arguments that Plaintiffs' § 10(b) claim should be dismissed for failure to plead scienter with sufficient particularity. Under the PSLRA's heightened pleading instructions, a plaintiff alleging a § 10(b) claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); see also Tellabs, 127 S. Ct. at 2508. Therefore, a plaintiff alleging a § 10(b) claim must allege facts demonstrating that the defendants made false or misleading statements either intentionally or with deliberate recklessness. See Daou Systems, Inc., 411 F.3d at 1015. Recklessness, for purposes of § 10(b)'s scienter requirement, is a highly unreasonable omission, involving not merely simple (or even inexcusable) negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it. See DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385, 389 (9th Cir. 2002). Thus, to allege a "strong inference of deliberate recklessness," a plaintiff "must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity." Id.

By prescribing a "strong" inference of scienter, "Congress required plaintiffs to plead with particularity facts that give rise to a 'strong'—i.e., a powerful or cogent—inference. . . . [T]he inference of scienter must be more than merely 'reasonable' or permissible'—it must be cogent and compelling, thus strong in light of other explanations." Tellabs, 127 S. Ct. at 2510. In the context of an audit, "[t]he plaintiff must prove . . . that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." DSAM Global Value Fund, 288 F.3d at 390 (internal citations omitted). On their

---

[4] KPMG argues that Plaintiffs have failed to allege with particularity that KPMG's statements from SeraCare's 2003 and 2004 10-K reports were misstatements because Plaintiffs have failed to allege sufficient facts demonstrating that KPMG was aware of any of the alleged errors in SeraCare's financial statements. This argument is essentially the same as KPMG's argument that Plaintiffs did not allege scienter with sufficient particularity, and will be dealt with here, in the Court's scienter analysis.

05-CV-2335

own, inaccurate accounting fingers or negligent GAAP violations do not establish scienter. Id.

The Court finds that plaintiffs have inadequately pled facts giving rise to a strong inference of KPMG's scienter concerning the falsity of KPMG's statements that SeraCare's financial statements fairly presented SeraCare's financial position, and that KPMG conducted its audits of SeraCare in conformity with GAAS.

First, regarding Plaintiffs' allegations concerning KPMG representatives' involvement with inventory counts at SeraCare's storage facilities, the Court concludes that, at worst, these allegations demonstrate negligent conduct on KPMG's behalf. Plaintiffs have failed to allege accounting practices so deficient that no reasonable accountant would have made the same decisions if confronted with the same facts.

Second, according to MHM's letter to SeraCare addressing its concerns regarding SeraCare's accounting practices, MHM was engaged to audit SeraCare's fiscal year 2005 financial statements. (FAC Ex. 7 at 18.) Indeed, Plaintiffs allege that MHM was alarmed by a $1 million sale of albumin by SeraCare in September 2005. (Id. ¶¶ 218-19.) Therefore, MHM's concerns regarding SeraCare's 2005 accounting processes raise only a small, if any, inference that KPMG's accounting practices regarding its audits of SeraCare's 2002-04 financial statements were so deficient that no reasonable accountant would have made the same decisions if confronted with the same facts.

Third, the Court concludes that Plaintiffs' allegations regarding KPMG's "special insight into SeraCare's inner-workings" amount to little more than the typical auditing and tax-related services that an outside accounting agency characteristically offers to corporate clients. Such allegations can hardly be the averments necessary to raise a strong inference of scienter on top of allegations regarding the publication of inaccurate accounting figures or failure to follow GAAP.

Finally, Plaintiffs' allegations regarding SeraCare's failure to follow GAAP are alone insufficient to establish KPMG's scienter. See DSAM Global Value Fund, 288 F.3d at 390.

Therefore, the Court concludes that Plaintiffs have failed to allege facts giving rise to the requisite strong inference of scienter on KPMG's part. Accordingly, the Court grants KPMG's motion to dismiss Plaintiff's 10(b) claim.

05-CV-2335

**B.      Plaintiffs' Section 11 Claim Against KPMG**

       **1.      Pleading Standard**

Plaintiffs allege that KPMG violated § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Section 11 creates a private remedy against certain individuals when any part of a registration statement, when it became effective, contains an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. See 15 U.S.C. § 77k(a). A plaintiff bringing a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment. See Daou Systems, Inc., 411 F.3d at 1027. "No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404 (9th Cir. 1996). Individuals potentially liable under § 11 include:

> every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him.

15 U.S.C. § 77k(a)(4); see Monroe v. Hughes, 31 F.3d 772, 774 (9th Cir. 1994) (section 11 permits an action against an accountant based on contents of a registration statement, but only with respect to the portions purportedly prepared or certified by the accountant).

KPMG argues that Plaintiffs' § 11 claim against them "sounds in fraud" and should therefore be dismissed for failure to adequately plead with particularity the circumstances constituting the claim, pursuant to FRCP 9(b). Plaintiffs counter that their § 11 claim against KPMG is based on their allegations that KPMG negligently violated its duty to ensure the accuracy and completeness of the registration statement associated with the Secondary Offering, and therefore plaintiffs are only required to plead a short and plain statement of their claim pursuant to FRCP 8(a).

In cases where fraud is not a necessary element of a claim, but a plaintiff chooses to allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of

the claim, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading must satisfy the particularity requirement of FRCP 9(b).  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d, 1097, 1103-04 (9th Cir. 2003); see also In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404-05 (9th Cir. 1996) ("We now clarify that the particularity requirements of Rule 9(b) apply to claims brought under Section 11 when, as here, they are grounded in fraud.").  In cases where a plaintiff chooses to allege some fraudulent and some non-fraudulent conduct, however, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.  See Vess, 317 F.3d at 1104.  According to the Ninth Circuit, "'[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.'"  Daou Systems, 411 F.3d at 1027 (quoting Vess, 317 F.3d at 1105).  Nonetheless, "when the complaint makes a 'wholesale adoption' of the securities fraud allegations for purposes of the Securities Act claims . . . a district court is not required to sift through allegations of fraud in search of some 'lesser included' claim of strict liability."  Id. at 1028 (quoting Lone Star Ladies Inv. Club v. Schlotzky's Inc., 238 F.3d 363, 368-69 (5th Cir. 2001)).

Plaintiffs allege that KPMG actively participated in SeraCare's fraudulent efforts to artificially increase the value of its inventory and prematurely recognize revenue.  (Consol. Compl. ¶¶ 60, 63, 65.)  Plaintiffs also allege that KPMG falsely stated its audits of SeraCare's 2003 and 2004 10-Ks were performed according to GAAS, when in fact they failed to perform the most basic functions of an audit.  (Id. ¶¶ 70-71.)  They allege that KPMG refused to see, or simply ignored, obvious overstatements in inventories, numerous unsupported sales transactions, changes to inventory balances, capitalization of overhead expenses, and excess inventory.  (Id. ¶ 296.)  Plaintiffs also allege that, despite KPMG's knowledge or reckless disregard of SeraCare's false and misleading financial statements, it failed to disclose material adverse facts about the financial condition and business prospects of SeraCare.  (Id. ¶¶ 42, 399.)  They also allege that KPMG knowingly or recklessly prepared false or misleading SEC filings and press releases, and knowingly or recklessly gave false information to security analysts, money and portfolio managers, and institutional investors.  (Id. ¶ 398.)

KPMG is only liable under § 11 for those portions of the Registration Statement that

05-CV-2335

purport to have been prepared or certified by the accountant. See Monroe, 31 F.3d at 774. Plaintiffs' basis for KPMG's § 11 liability is the fact that KPMG stated in the Registration Statement that SeraCare's 2003 and 2004 audited financial statements fairly presented SeraCare's financial position in all material respects. (FAC ¶¶ 161-62.) This is the same unified course of fraudulent conduct Plaintiffs allege that KPMG undertook throughout the FAC. Plaintiffs have not simply chosen to allege some fraudulent and some non-fraudulent conduct against KPMG. Rather, Plaintiffs have alleged throughout their complaint that KPMG has made a myriad of fraudulent misrepresentations, and then tries to allege that the same conduct was merely negligent when applied to their § 11 claim. Cf. Daou Systems, Inc., 411 F.3d at 1028 (relying on fact that the plaintiffs alleged myriad misrepresentations made by defendants in finding that their complaint sounded in fraud against those defendants). Therefore, the Court concludes that Plaintiffs' claims against KPMG allege a unified course of fraudulent conduct and that Plaintiffs' § 11 claim is grounded in fraud. Therefore, Plaintiffs' § 11 claim must satisfy the particularity requirement of FRCP 9(b). See Vess, 317 F.3d at 1103-04; Stac Electronics, 89 F.3d at 1404-05.

### 2.    Plaintiffs' § 11 Claim Against KPMG

Since the Court has determined that Plaintiffs' complaint against KPMG sounds in fraud, Plaintiffs must allege with particularity that the Registration Statement contained an omission or misrepresentation, and that the omission or misrepresentation was material, i.e., it would have misled a reasonable investor about the nature of the investment. See Daou Systems, 411 F.3d at 1028. KPMG argues that Plaintiffs' complaint should be dismissed for failure to allege with particularity that any false statements were made by KPMG.

As previously noted, Plaintiffs may only bring a § 11 claim against KPMG based on those portions of the Registration Statement that KPMG purported to prepare or certify. See Monroe, 31 F.3d at 774. Plaintiffs allege that KPMG is liable under § 11 because, in SeraCare's Registration Statement, KPMG stated that it audited SeraCare's balance sheets for fiscal years 2003 and 2004, along with related financial statements for each year in the three-year period ending September 30, 2004, and found that those statements fairly presented SeraCare's financial position in all material respects. (FAC ¶ 161.) Plaintiffs allege that this statement was false because (1) SeraCare

Case 3:05-cv-02335-JLS-CAB   Document 181   Filed 03/14/08   PageID.3765   Page 28 of 32

prematurely recognized $1 million in revenue from a sale of albumin to Wyeth in violation of SAB Topic 13; (2) SeraCare systematically and prematurely booked revenue in violation of SAB Topic 13; (3) SeraCare failed to write down inventory carried at above-market value; (4) SeraCare improperly capitalized overhead costs and SG&A expenses to inventory; (5) SeraCare's inventory reserves were improper; and (6) SeraCare conceded that the quarterly report on Form 10-Q for the quarters ended December 31, 2004 and March 31, 2005 should no longer be relied upon. (Id. ¶ 162.)

Relying on its previous analysis, the Court concludes that Plaintiffs have failed to plead with sufficient particularity that KPMG's statement was false based upon allegations that SeraCare prematurely booked revenue and inflated the value of inventory on its financial statements. Furthermore, Plaintiffs' allegations regarding SeraCare's sales to Roche and Bio Vitrum in fiscal year 2005 fail to relate to an actionable misstatement by KPMG.

However, also relying on its previous analysis, the Court concludes that Plaintiffs have adequately pled that KPMG falsely stated that SeraCare's 2003 and 2004 financial statements fairly presented SeraCare's financial position in all material respects.  Plaintiffs support this claim with allegations that SeraCare (1) prematurely recognized $1 million in revenue from a sale of albumin to Wyeth and $385,000 from a sale of albumin to Biogen in 2003 and (2) improperly accounted for inventory obtained through its acquisition of BBI in 2004.  KPMG's scienter is not relevant to this claim.  Stac Electronics, 89 F.3d at 1404.  Therefore, the Court denies KPMG's motion to dismiss Plaintiffs' § 11 claim with respect to the albumin sales to Wyeth and Biogen and the accounting for inventory obtained in the BBI acquisition.

### 3.    Loss Causation Defense

Causation is not a necessary element of a prima facie case under § 11 of the Securities Act. See In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 277 (3d Cir. 2004); see also Casella v. Webb, 883 F.2d 805, 808 n.8 (9th Cir. 1989) (holding under similar § 12(2) of Securities Act of 1933 that if the alleged misrepresentations are material, a plaintiff is entitled to recovery whether or not the misrepresentations caused the alleged damage).  Section 11 plaintiffs cannot recover damages to the extent that "the defendant proves that any portion or all of such damages represents other than

- 28 -

05-CV-2335

the depreciation in value of such security resulting from [the] part of the registration statement, with respect to which [defendant's] liability is asserted." 15 U.S.C. § 77k(e). A defendant has a heavy, through not insurmountable burden of establishing this loss causation defense. See In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1421-22 (9th Cir. 1994).

KPMG argues that Plaintiffs' § 11 claim should be dismissed because the FAC establishes on its face that KPMG is entitled to a loss causation affirmative defense. A complaint may be dismissed pursuant to a 12(b)(6) motion if an affirmative defense clearly appears on the face of the pleading. McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.")

KPMG argues that, since its alleged misstatements in the Registration Statement concern the audit reports of SeraCare's 2003 and 2004 financial statements, and since the alleged drops in SeraCare's stock price occurred after public statements regarding SeraCare's 2005 quarterly financial statements, the affirmative defense of lack of loss causation appears on the face of Plaintiffs' complaint. Loss causation in a securities fraud case exists, however, where a misrepresentation merely touches upon the reasons for an investment's decline in value. See Worlds of Wonder, 35 F.3d at 1422. In the December 2005 statement, SeraCare disclosed that MHM had concerns regarding certain of SeraCare's revenue recognition accounting policies and practices and its accounting for and valuation of inventory. (FAC Ex. 18 at 105.) In its March 2006 public disclosure, SeraCare disclosed that its Board of Directors, upon the recommendation of its Audit Committee, had concluded that SeraCare's previously issued 2005 quarterly financial statements should no longer be relied upon. (Id. ¶ 83 & Ex. 17.) The Board of Directors further concluded that SeraCare expected to restate one or more of those statements. (Id.) Finally, after an internal review, SeraCare determined that there were material weaknesses in its internal control over financial reporting and previously issued financial statements also might require corrections. (Id.) Viewing these allegations in the light most favorable to Plaintiffs, the Court concludes that KPMG's alleged misstatements touched upon the reasons why SeraCare's stock declined after its

- 29 -

public statements in December 2005 and March 2006.  In other words, SeraCare's public statements regarding accounting problems touched upon its financial documents prior to fiscal year 2005.[5]  See Worlds of Wonder, 35 F.3d at 1422.  Therefore, the Court denies KPMG's motion to dismiss Plaintiffs' § 11 claim against them based on the affirmative defense of lack of loss causation.

### C.   Plaintiffs' Section 11 Claim Against the Underwriter Defendants

Section 11 creates a private remedy against every underwriter to a security when any part of the registration statement, at the time it became effective, contains an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  See 15 U.S.C. § 77k(a)(5).  The Underwriter Defendants argue that Plaintiffs' § 11 claim "sounds in fraud" against them, and should therefore be dismissed for failure to adequately plead with particularity the circumstances constituting the claim, pursuant to FRCP 9(b).

Unlike their allegations against KPMG, Plaintiffs' allegations against the Underwriter Defendants are not based on alleged intentionally fraudulent acts that Plaintiffs then try to convert to negligence claims.  Rather, Plaintiffs claim that, in the exercise of reasonable care, the Underwriter Defendants should have known of material misstatements and omissions contained in the Registration Statements, but failed to make a reasonable investigation or to ensure that the statements in the Registration Statement were accurate and complete in all material respects.  (FAC ¶¶ 425-26.)  Such allegations are not grounded in fraud, and, therefore, only need to satisfy the ordinary notice pleading standard of FRCP 8(a).  See Vess, 317 F.3d at 1104-05 ("To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments . . . would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).").

Therefore, to survive dismissal, Plaintiffs's complaint must allege that the Registration

---

[5] Because of the vastly different burdens of proof, there is no tension between this conclusion and the Court's previous conclusion that MHM's concerns regarding SeraCare's 2005 accounting practices raise, at most, a small inference regarding KPMG's auditing of SeraCare's 2002-04 financial statements.

Statement contained material omissions or misrepresentations that could mislead a reasonable investor about the nature of the investment, sufficient to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true even if doubtful in fact. See Twombly, 127 S. Ct. at 1965.  Plaintiffs allege that the Registration Statement included the misleading statements regarding SeraCare's fiscal 2003 and 2004 financial statements and other statements regarding financial results for those years, as well as false statements regarding SeraCare's financial results for the six months ended March 31, 2005.  (FAC ¶¶ 155-56.) Plaintiffs allege that these statements were false and misleading because (a) SeraCare had prematurely recognized $1 million in revenue from a sale of albumin to Wyeth in 2003 that had not yet been delivered, in violation of SAB Topic 13; (b) SeraCare had systematically and prematurely booked revenue, including $385,000 in revenue from a sale of albumin to Biogen in 2003 and $454,080 in revenue from a sale of blood panels to Roche in 2004, in violation of SAB Topic 13; (c) SeraCare failed to write down inventory carried at above-market value; (d) SeraCare improperly capitalized overhead costs and SG&A expenses to inventory such that inventory valued at $28 million at the beginning of fiscal year 2005 should have been valued at around $12 million; (e) SeraCare's inventory reserves regarding inventory acquired from BBI were improper; and (f) SeraCare conceded that the Form 10-Qs for the quarters ended December 31, 2004 and March 31, 2005 should no longer be relied upon.  (FAC ¶¶ 83, 157, 200-16, 222-33, 242-76).  The Court concludes that these allegations are sufficient to raise Plaintiffs' § 11 claim against the Underwriter Defendants above the speculative level.  Furthermore, the Court concludes that, viewing Plaintiffs' allegations in the light most favorable to them, it is not apparent on the face of the complaint that the alleged misstatements in the Registration Statement did not touch upon the reasons why SeraCare's stock price declined after SeraCare's December 2005 and March 2006 public statements.  Accordingly, the Court denies the Underwriter Defendants' motion to dismiss Plaintiffs' § 11 claim.

## Conclusion

For the reasons stated herein, with respect to KPMG, the Court **GRANTS** the motion to dismiss Plaintiffs' § 10(b) claim. The Court **GRANTS IN PART** and **DENIES IN PART** the

05-CV-2335

motion to dismiss the § 11 claim.  Specifically, the Court denies the motion to dismiss the § 11 claim based on KPMG statements allegedly made false by the underlying albumin sales to Wyeth and Biogen and the accounting for inventory obtained in the BBI acquisition.

The Court **DENIES** the Underwriter Defendants' motion to dismiss Plaintiffs' § 11 claim against them.

To the extent that the Court grants KPMG's motion, the dismissal is **WITHOUT PREJUDICE**. Plaintiffs **SHALL HAVE** thirty (30) days from the date that this Order is electronically docketed to file a second amended complaint correcting the FAC's deficiencies in pleading the dismissed claims.

IT IS SO ORDERED.

DATED:  March 14, 2008

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

- 32 -                                                                          05-CV-2335